Opinion issued August 21, 2003












 

 


In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-01412-CV

____________


ALDINE INDEPENDENT SCHOOL DISTRICT, HARRIS COUNTY,
HARRIS COUNTY EDUCATION DEPARTMENT, PORT OF HOUSTON
OF HARRIS COUNTY, HARRIS COUNTY FLOOD CONTROL
DISTRICT, HARRIS COUNTY HOSPITAL DISTRICT, NORTH HARRIS
MONTGOMERY COMMUNITY COLLEGE DISTRICT, AND THE CITY
OF HOUSTON, Appellants

V.


CONNIE OGG AND JACK C. OGG, Appellees






On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 1998-49492






O P I N I O N 


 In this ad valorem tax case, the trial court entered judgment against appellees,
Jack C. Ogg, in personam, and against Connie Ogg, in rem, in favor of the appellant
taxing authorities, Aldine Independent School District (AISD), Harris County, and
other taxing units (1) (collectively "the County") for delinquent ad valorem taxes owed
on a piece of real property. The portion of the judgment awarding base taxes to
appellants is not challenged here. Rather, AISD and the County challenge the legal
and factual sufficiency of the evidence supporting that portion of the judgment
denying them penalties, interest, costs, and attorney's fees associated with collection
of the ad valorem taxes. 

 We affirm in part and reverse and remand in part.

Factual and Procedural Background


 In 1962, Jack Ogg acquired 1.5 acres of unimproved real property ("the
property") in Harris County. In 1987, the City of Houston filed suit against Jack Ogg
for delinquent taxes on the property, along with penalties and interest, for tax years
1982 through 1986. Jack Ogg made an appearance in the case, but the suit was
eventually dismissed without prejudice. Jack Ogg owned the property until October
1990, at which time he conveyed it to his wife, Connie Ogg.

 In 1998, AISD filed suit against Connie and Jack Ogg seeking delinquent taxes
on the property for tax years 1977 through 1987, and 1995 through 1997. AISD later
stipulated that its claim for the 1977 taxes was barred by the statute of limitations. 
The County intervened in the suit, seeking recovery of delinquent taxes for tax years
1984 through 1987 and 1995 through 1998. AISD and the County also sought
penalties, interest, costs, and attorney's fees. Before trial, the Oggs paid the taxes,
interest, penalties, and attorney's fees owed to AISD and the County for tax years
1995 through 1999, and those years are not at issue on appeal. (2) The relevant tax years
at issue in this appeal are 1978 through 1987 for AISD and 1984 through 1987 for the
County. 

 The Oggs have never claimed that they paid the taxes for the years in question. 
Rather, the dispute involves whether the taxing units delivered tax bills and
delinquency notices to the Oggs, namely Jack Ogg, as required by law during the
years in question. 

 The case was initially tried before a tax master, who issued a report stating his
findings and recommendations. With regard to the tax years at issue in this appeal,
the tax master recommended that judgment be entered against Jack Ogg, in personam,
and Connie Ogg, in rem, in favor of AISD for base taxes for 1978 through 1987 and
in favor of the County for 1984 through 1987. The tax master also recommended that
the taxing units be awarded penalties, interest, and collection costs for years 1985,
1986, and 1987. AISD, the County, and the Oggs appealed the tax master's decision
to the district court, which reviewed the tax master's decision in a trial de novo. It
is the decision of the district court that is the subject of this appeal. 

 Following the trial de novo, the trial court entered judgment awarding AISD
base taxes for 1978 through 1987, and the County base taxes for 1984 through 1987. 
However, the trial court specified that none of the taxing units were entitled to
interest, penalties, attorney's fees, or costs. In support of the judgment, the trial court
filed 84 findings of fact and 42 conclusions of law. In sum, the trial court found and
concluded that AISD and the County failed to "deliver" tax bills, delinquent tax
statements, and delinquent tax notices as required by law. Specifically, the trial court
found that neither AISD nor the County had delivered the five-year delinquent tax
notices as required by Tax Code section 33.04(b), and that the taxing units had not
delivered the required tax bills or statements for the individual years in
question--1978 through 1987 for AISD and 1984 through 1987 for the County. 

 The trial court also found that, over the years, the taxing units had failed to
send the required notices and bills to Ogg's correct addresses. The trial court found
the evidence showed that AISD and the County had either no address or incorrect
addresses for the Oggs during the years in question. The trial court ultimately
concluded that, because AISD and the County had not delivered the required notices,
the taxes at issue were not "delinquent" and, as a result, AISD and the County were
not entitled to penalties, interest, attorney's fees, or costs for the tax years at issue.

 Issues Presented


 In two multi-pronged issues, AISD contends that (1) the evidence was legally,
or alternatively, factually insufficient for the trial court to find that AISD did not
"deliver" tax bills, delinquent tax statements, and notices of delinquency, and (2) no
legal authority or factual basis existed for the trial court to deny AISD's recovery of
penalties, interest, court costs, and attorney's fees for the delinquent tax years, as well
as post-judgment interest. 

 In seven issues, the County contends that (1) the evidence was legally, or
alternatively, factually insufficient to support the trial court's findings that the County
failed to deliver the required delinquency notices pursuant to Tax Code section
33.04(b); (2) the trial court erred in failing to award attorney's fees, costs, and post-judgment interest; and (3) to that the extent the trial court's judgment extinguishes
interest that has accrued since August 26, 1991, it violates Article III, § 55 of the
Texas Constitution.

Discussion


A. Legal and Factual Sufficiency 

 We first discuss the appellants' contentions that the evidence was legally and
factually insufficient to support the trial court's findings of fact that AISD and the
County failed to deliver delinquency notices and tax bills to the Oggs, as required by
the Tax Code.

 1. Penalties and Interest

 Only two provisions of the Tax Code provide for cancellation or waiver of
penalties and interest on delinquent taxes--section 33.011, which is not applicable
to this case, (3) and section 33.04. 

 a. Section 33.04

 In 1979, the legislature passed Senate Bill number 621, which enacted the
applicable provisions of the Tax Code. (4) One of these provisions of the newly-enacted
Tax Code was section 33.04, entitled "Notice of Delinquency," which became
effective January 1, 1982. (5) Since its enactment, this section of the code (6) was
amended in 1981, 1985, 1999, and 2001. (7) Following the 1985 amendments, section
33.04 read as follows:

 (a) At least once each year the collector for a taxing unit shall deliver
a notice of delinquency to each person whose name appears on
the current delinquent tax roll. However, the notice need not be
delivered if:


 (1) a bill for the tax was not mailed pursuant
to the authorization provided by Subsection
(f) of Section 31.01(f) of this code; or 


 (2) the collector does not know and by
reasonable diligence cannot determine the
delinquent taxpayer's name and address.



 (b) In addition to the notice required by Subsection (a) of this section,
the tax collector for each taxing unit in each year divisible by five
shall deliver by mail a written notice of delinquency to each
person who owes a tax that has been delinquent more than one
year and whose name and mailing address are known to the
collector or can be determined by the exercise of reasonable
diligence. He shall state in the notice the amount of the
delinquent tax, penalties, and interest due, the description of the
property on which the tax was imposed, and the year for which
the tax is delinquent. If the person owes delinquent taxes for
more than one year or on more than one property, the collector
may include all delinquent taxes the person owes in a single
notice.


 (c) Penalties and interest on a tax delinquent more than five years or
a multiple of five years are cancelled and may not be collected if
the collector has not delivered the notice required by Subsection
(b) of this section in each year that is divisible by five following
the date on which the tax first became delinquent for one year. (8)

 The 1985 amendments became effective August 26, 1985, and applied to
notices required by subsections (a) and (b) to be given in 1985. (9) Section 33.04 was
not amended again until 1999. (10) The 1999 amendment became effective January 1,
2000 (11) and applied only to 33.04(b) notices given in and after 2000. (12) Thus, the 33.04
notices required to be given by AISD and the County in 1985, 1990, and 1995 were
governed by the 1985 version of section 33.04. (13) 

 To reiterate, AISD claimed delinquent taxes, penalties, and interest were owed
on the property for tax years 1978 through 1987; the County's claim covered tax
years 1984 through 1987. Pursuant to section 33.04(b), AISD was required to deliver
delinquency notices to Jack Ogg in 1985, 1990, and 1995. (14) The County was required
to give 33.04(b) notices in 1990 and 1995. As stated by subsection 33.04(c), failure
by AISD or the County to give the required 33.04(b) notices mandated cancellation
of penalties and interest on the taxes owed. (15) 

 b. Presumptions and Burden of Proof

 Tax Code subsection 33.47(a) addresses evidentiary concerns in delinquent tax
cases and provides as follows:

 (a) In a suit to collect a delinquent tax, the taxing unit's current tax roll
and delinquent tax roll or certified copies of the entries showing the
property and the amount of the tax and penalties imposed and interest
accrued constitute prima facie evidence that each person charged with
a duty relating to the imposition of the tax has complied with all
requirements of law and that the amount of tax alleged to be delinquent
against the property and the amount of penalties and interest due on that
tax as listed are the correct amounts.

Tex. Tax Code Ann. § 33.47(a) (Vernon 2001). Once the taxing unit introduces
these records, it establishes a prima facie case as to every material fact necessary to
establish its cause of action. Davis v. City of Austin, 632 S.W.2d 331, 333 (Tex.
1982); see also Phifer v. Nacogdoches County Cent. Appraisal Dist., 45 S.W.3d 159,
174 (Tex. App.--Tyler 2000, pet. denied); Escamilla v. City of Laredo, 9 S.W.3d 416,
421 (Tex. App.--San Antonio 1999, pet. denied). When the taxing unit establishes
a prima facie case in a tax delinquency suit, a rebuttable presumption arises that the
taxing entity has taken all actions necessary to obtain legal authority to levy the tax,
including proper delivery of all required tax notices. See Flowers v. Lavaca County
Appraisal Dist., 766 S.W.2d 825, 828 (Tex. App.--Corpus Christi 1989, writ denied)
(stating taxing unit's establishment of prima facia case creates presumption that
taxing entity has taken all actions necessary to obtain legal authority to levy tax); D
& M Vacuum Serv., Inc. v. Zavala County Appraisal Dist., 812 S.W.2d 435, 437-38
(Tex. App.--San Antonio 1991, no writ) (discussing presumption of regularity
created by section 33.47); see also Phifer, 45 S.W.3d at 174 (determining that when
appraisal district introduced certified copies of delinquent tax record, it established
its prima facie case as to every material fact necessary to establish its cause of action,
including that taxpayer received proper delinquent tax notices). 

 Here, AISD introduced certified copies of their tax rolls; the County introduced
certified copies of its tax statements showing the delinquent taxes, penalties, and
interest owing for the property. After AISD and the County made their prima facie
case by introducing the official tax records, the burden then shifted to the Oggs to
show, by introducing competent evidence, that the taxing units had not delivered the
required tax notices. (16) See Escamilla, 9 S.W.3d at 421; D & M Vacuum Serv., 812
S.W.2d at 438. The presumption created by section 33.47 disappears if and when the
taxpayer meets its burden of producing competent evidence to justify a finding
against the presumed fact. (17) D & M Vacuum Serv., 812 S.W.2d at 437; see also
Kirkconnell & Cooper, Inc. v. Point Isabel Indep. Sch. Dist., 608 S.W.2d 743, 744
(Tex. Civ. App.--Corpus Christi 1980, no writ) (interpreting predecessor statute to
section 33.47). In other words, once the 33.47 presumption is established, the Oggs
had the burden "to go forward with [their] defensive evidence" related to the issue of
non-delivery. Escamilla, 9 S.W.3d at 421 (quoting David Graham Hall Found. v.
Highland Park Indep. Sch. Dist., 371 S.W.2d 762, 764 (Tex. Civ. App.--Dallas 1963,
writ ref'd n.r.e.)). 

 2. Standard of Review

 In an appeal from a bench trial, findings of fact have the same weight as a
jury's verdict. Amador v. Berrospe, 961 S.W.2d 205, 207 (Tex. App.--Houston [1st
Dist.] 1996, writ denied). When challenged, findings of fact are not conclusive if, as
in the present case, there is a complete reporter's record. Id. When there is a
reporter's record, the trial court's findings of fact are binding only if supported by the
evidence. Id. If the findings are challenged, the court of appeals will review the
sufficiency of the evidence supporting the findings. See State Bar of Tex. v. Roberts,
723 S.W.2d 233, 235 (Tex. App.--Houston [1st Dist.] 1986, no writ). We review the
legal and factual sufficiency of the evidence supporting a trial court's findings of fact
by the same standards that we apply to reviewing the legal or factual sufficiency of
the evidence supporting jury findings. Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994). 

 When the appellant challenges the legal sufficiency of the evidence to support
a finding on which it did not have the burden of proof at trial, the appellant must
demonstrate on appeal that no evidence exists to support the adverse finding. (18) 
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); II Deerfield Ltd. P'ship v.
Henry Bldg., Inc., 41 S.W.3d 259, 264 (Tex. App.--San Antonio 2001, pet. denied);
Casino Magic Corp. v. King, 43 S.W.3d 14, 19 (Tex. App.--Dallas 2001, pet.
denied). In conducting a no-evidence review, an appellate court must "view the
evidence in a light that tends to support the finding of the disputed fact and disregard
all evidence and inferences to the contrary." Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001) (citing Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1990)). A
no-evidence point may be sustained only when the record discloses one of the
following: (1) there is a complete absence of evidence of a vital fact; (2) the court is
barred by rules of law or evidence from giving weight to the only evidence offered
to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital
fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). 

 If there is more than a scintilla of evidence to support the finding, the claim is
sufficient as a matter of law. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928
(Tex. 1993). But, if the evidence offered to prove a vital fact is so weak that it does
nothing more than create a mere surmise or suspicion of its existence, the evidence
is no more than a scintilla and, in legal effect, is no evidence. Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983); Seideneck v. Cal Bayreuther Assocs., 451
S.W.2d 752, 755 (Tex. 1970). "More than a scintilla of evidence exists where the
evidence supporting the finding, as a whole, 'rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.'" Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995) (quoting Transp. Ins. Co.
v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)).

 In reviewing a factual-sufficiency point, we consider all the evidence
supporting and contradicting the finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). In a bench trial, the trial
court, as factfinder, is the sole judge of the credibility of the witnesses. Southwestern
Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.--Houston [1st Dist.] 1992,
writ denied).

 With these legal principles in mind, we first determine whether the evidence
was legally and factually sufficient to support the trial court's findings that AISD and
the County failed to deliver the five-year delinquency notices required by subsection
33.04(b).

 c. 33.04(b) Notices

 i. 1985 Notice

 As stated above, subsection 33.04(b) required AISD to deliver a five-year
delinquency notice to Jack Ogg in 1985. (19) The 1985 delinquency notice should have
notified Ogg that he owed delinquent taxes, penalties, and interest for tax years
1977 (20) through 1983. The trial court found that AISD failed to deliver the notice. 

 Jack Ogg testified that he never received any notices of delinquency from
AISD and had no knowledge of the delinquent taxes until suit was filed by AISD. In
addition to the testimony of non-receipt, the Oggs also presented evidence suggesting
that AISD had an incorrect mailing address for Ogg in 1985. Subsection 1.07(b)
requires a taxing authority to address the tax notice to the property owner, or his
agent, at the address according to the most recent record in the possession of the
property taxing authority. Tex. Tax Code Ann. § 1.07(b) (Vernon 2001). Ogg
testified that his business address in 1985 was 1300 Post Oak Boulevard, Suite 1750. 
Michelle Rice, AISD's current tax assessor-collector, testified that, in 1985, AISD
used the taxpayer addresses provided by the Harris County Appraisal District for
purposes of mailing notices. Through Rice, AISD introduced a copy of the 1985 tax
roll which stated Jack Ogg's address as follows: "Ogg Jack C, Alied [sic] Bank
Tower, 1300 Post OakBlvd [sic] Ste 1750, Houston, Tx. 77056." As such, this was
the address according to the most recent record in AISD's possession and was the
address to which AISD should have mailed the 33.04(b) notice in 1985. See id.

 Both AISD and Ogg introduced a "consolidated tax statement" printed from
AISD's computer system in July 1999, which listed Ogg's suite number as 175 rather
than 1750. This address differed from the address supplied to AISD by the Harris
County Appraisal District. The Oggs argue this discrepancy showed that AISD had
an incorrect address in its records to which AISD may have sent the required tax
notice. The evidence further showed that AISD did not keep copies of the actual
notices sent to the taxpayer. 

 AISD correctly points out that it introduced evidence showing that, in 1985,
regarding its general practices, (1) AISD mailed the delinquent tax notices by first-class mail, postage prepaid; (2) AISD sent notices in 1985 to the name and address
provided by the Harris County Appraisal District on the tax roll; and (3) AISD's staff
delivered the notices to the post office. However, on cross-examination, Ogg elicited
the testimony of Brian Mackenzie, who worked at AISD as a residential appraiser
from 1983 to 1985. Mackenzie testified that, in 1984 and 1985, delinquency notices
were mailed by "bulk mail" rather than first-class mail.

 Because it introduced certified copies of its tax rolls into evidence, AISD was
entitled to the section 33.47 presumption that it delivered the 33.04(b) delinquency
notice in 1985. However, Ogg's testimony of non-receipt, combined with the copy
of the consolidated tax statement showing an incorrect address, was sufficient to rebut
the section 33.47 presumption that the 33.04(b) delinquency notice was delivered in
1985. See Inwood Dad's Club v. Aldine Indep. School Dist., 882 S.W.2d 532, 540-41
(Tex. App.--Houston [1st Dist.] 1994, no writ); Uvalde County Appraisal Dist. v.
Parker, 733 S.W.2d 609, 611 (Tex. App.--San Antonio 1987, writ ref'd n.r.e.). 

 Once the Oggs rebutted the section 33.47 presumption that AISD delivered the
delinquency notice in 1985, the evidence remained to be weighed by the trial court,
as trier of fact, to "resolve matters of weight and credibility among the competing
items of evidence." D & M Vacuum Serv., 812 S.W.2d at 438; accord Duval County
Ranch Co. v. State, 587 S.W.2d 436, 442 (Tex. App.--San Antonio 1979, writ ref'd
n.r.e.). Given the power of the trial court as factfinder to believe or disbelieve the
evidence and to resolve questions of credibility, we hold that the evidence--the
Oggs' testimony of non-receipt coupled with the discrepancy in AISD's records
relating to Jack Ogg's address, and Mackenzie's testimony that the notices were not
mailed first-class--was both legally and factually sufficient to support the trial
court's finding of fact that AISD did not "deliver" the 33.04(b) notice to Jack Ogg in
1985. Accordingly, pursuant to section 33.04(c), AISD was not entitled to penalties
or interest for tax years 1978 through 1983, which should have been included in the
33.04(b) notice required to be sent in 1985. (21)

 ii. 1990 and 1995 Notices

 AISD and the County were required to deliver 33.04(b) notices in 1990 and
1995 to Jack Ogg, as the "person who owes a tax." (22) The 33.04(b) notices should
have notified Ogg that delinquent taxes, penalties, and interest were owed on the
property for tax years 1984 through 1987.

 Tax Code subsection 1.07(b) provides, in relevant part, as follows:

 (b) The official or agency shall address the notice to the property
owner, the person designated under Section 1.111(f) to receive
the notice for the property owner, if that section applies, or, if
appropriate, the property owner's agent at his address according
to the most recent record in the possession of the official or
agency. However, if a property owner files a written request that
notices be sent to a particular address, the official or agency shall
send the notice to the address stated in the request. (23)

Tex. Tax Code Ann. § 1.07(b).

 In 1988, Jack Ogg filed a form with the Harris County Appraisal District,
designating Harding & Carbone, a property tax consulting firm, as his fiduciary. The
form specifically stated as follows: 

 I hereby appoint the above specified as my fiduciary under Sec. 1.11,
Tax Code, and request that such fiduciary be sent all notices, tax bills,
and other communications relating to the property or the taxes thereon. 
I understand that this appointment will remain in effect until revoked by
the owner in writing. 


 Although it is unclear from the record whether Ogg revoked the appointment
in writing, Brian Mackenzie, (24) who had been employed by Harding and Carbone for
15 years at the time of trial, testified that Ogg was a client of the firm until 1997. It
appears undisputed that the appointment was revoked no later than 1998.

 Tax Code section 1.11 provides as follows: (25)

 (a) On the written request of a property owner, an appraisal office or
an assessor or collector shall deliver all notices, tax bills, and
other communications relating to the owner's property or taxes to
the owner's fiduciary.


 (b) A request pursuant to this section remains in effect until revoked
by the owner.

Tex. Tax Code Ann. § 1.11 (Vernon 2001). When a fiduciary is appointed by a
taxpayer under section 1.11, the taxing unit must deliver all notices and tax bills to
the fiduciary. Id.; MCI Telecom. Corp. v. Tarrant County Appraisal Dist., 723
S.W.2d 350, 352 (Tex. App.--Fort Worth 1987, no writ). Accordingly, in 1990 and
1995, AISD and the County were required to deliver the 33.04(b) notices to Harding
and Carbone, designated fiduciary of Jack Ogg.

 The trial court made findings of fact that AISD and the County failed to deliver
the 33.04(b) notices in 1990 and 1995. (26) As previously stated, AISD and the County
each proved its prima facie case as to every material fact necessary to establish its
cause of action when it introduced its certified tax records showing the delinquent
taxes owed, interest, and penalties. See Tex. Tax Code Ann. § 33.47. This included
a presumption that the 33.04(b) notices were properly delivered to Harding &
Carbone in 1990 and 1995. The burden then shifted to the Oggs to offer competent
evidence to rebut the presumption of delivery.

 Jack Ogg denied receiving delinquency notices from either AISD or the County
in 1990 or 1995. Mackenzie testified, with regard to forwarding delinquency notices
to its clients, that it was Harding and Carbone's policy the entire 15 years he had
worked for the firm, to have the firm's receptionist forward delinquency notices to
the client when the notices were received. Mackenzie stated that he was not aware
of any instances in which delinquency notices were not forwarded. According to
Mackenzie, if Harding and Carbone had failed to forward delinquency notices, then
it could be sued. Mackenzie opined that, if a client of Harding and Carbone did not
receive a notice, then he believed that Harding and Carbone also had not received the
notice. However, Mackenzie failed to state that he had personal knowledge that
Harding and Carbone did not receive Jack Ogg's 33.04(b) delinquency notices in
1990 and 1995. With regard to this time frame, the Oggs also offered no evidence
that the taxing units had an improper address for Harding and Carbone, or that the
taxing units had failed to follow the mailing requirements of code section 1.07 in
delivering the 1990 and 1995 notices.

 Under section 33.47 and the case law interpreting it, the Oggs had the burden
to produce "competent evidence" to rebut the presumption that the taxing units
delivered the 33.04(b) notices in 1990 and 1995 to Harding and Carbone. The Oggs
failed to offer evidence sufficient to overcome that presumption; rather, the evidence
offered only suggested that the Oggs did not receive notices for those years. The
evidence offered by the Oggs raised only suspicion and conjecture that Harding and
Carbone may not have received the notices in 1990 and 1995. Suspicion and
conjecture are not evidence. See Browning-Ferris, 865 S.W.2d at 928; Kindred, 650
S.W.2d at 63. Because the Oggs failed to overcome the presumption afforded AISD
and the County that the taxing units had delivered the 33.04(b) notices to Harding and
Carbone, we hold that the evidence was legally insufficient to support the trial court's
findings of fact that the taxing units failed to deliver the 33.04(b) notices in 1990 and
1995. Accordingly, section 33.04(c) did not mandate cancellation of the penalties
and interest for the tax years covered by those notices, i.e., 1984, 1985, 1986, and
1987.

 d. Annual Delinquency Notices and Tax Bills

 The trial court also made findings of fact that AISD and the County failed to
deliver annual delinquent tax statements for the tax years in question. Subsection
33.04(a) required AISD and the County to send delinquent tax notices annually to
"each person whose name appears on the current delinquent tax roll" relating to the
property. (27) Tex. Tax Code Ann. § 33.04(a) (Vernon 2001). Under this provision,
AISD and the County were each required to send a delinquent tax statement to Jack
Ogg regarding the property. (28) However, the Tax Code has never required cancellation
of penalties or interest for failure to deliver an annual delinquent tax statement. Thus,
any failure by either AISD or the County to send annual delinquent tax statements in
this case is not determinative of whether they are entitled to receive penalties and
interest.

 The trial court also made findings of fact that AISD and the County failed to
deliver tax bills as required by law for the tax years in question. As stated above, we
have determined that AISD is not entitled to penalties and interest for tax years 1978
through 1983 because the evidence was legally and factually sufficient to show that
AISD failed to deliver 33.04(b) notice in 1985. Thus, we focus on tax years 1984
through 1987 for both AISD and the County to determine whether annual tax bills
were delivered to Jack Ogg for those years.

 Tax bills must be mailed by October 1 of the year for which taxes are assessed,
or as soon thereafter as practicable. (29) Tex. Tax Code Ann. § 31.01(a) (Vernon
2001). Taxes are due on receipt of the tax bill and are delinquent if not paid by
February 1 of the year following the year imposed. Tex. Tax Code Ann. § 31.02(a)
(Vernon 2001). 

 Code section 31.04 specifically provides that the date taxes become delinquent
is postponed until the first day of the next month after a tax bill is mailed, this
provides a period of at least 21 days after the date of mailing for payment of taxes. 
Tex. Tax Code Ann. § 31.04(a) (Vernon 2001). Section 31.04 also provides that,
in the event the delinquency date is postponed, the date on which interest and
penalties are due is also postponed to that date. Id. § 31.04(e). From reading these
provisions, it logically follows that, if no tax bill is ever mailed to the taxpayer, then
the taxes never become delinquent, and, thus, penalties and interest never accrue. 
However, Tax Code subsection 31.01(g) provides that the "[f]ailure to send or receive
the tax bill required by this section does not affect the validity of the tax, penalty, or
interest, the due date, the existence of a tax lien, or any procedure instituted to collect
a tax." Tex. Tax Code Ann. § 31.01(g). (30) Thus, at first glance, subsection 31.01(g)
appears to conflict with subsection 31.04(e). 

 In reconciling this apparent conflict, the rules of statutory construction instruct
us that statutes bearing on the same subject matter should be construed together, and
both given effect, if possible. Font v. Carr, 867 S.W.2d 873, 881 (Tex.
App.--Houston [1st Dist.] 1993, writ dism'd w.o.j.). We believe that these
provisions can both be given effect by construing section 31.04 to apply in situations
in which the taxing unit has the name and mailing address for the taxpayer, but either
neglects to mail the tax bill or mails it late; however, section 31.04 will not apply in
instances in which the taxing unit cannot send the tax bill because it does not have
the taxpayer's name or address. See Op. Tex. Att'y. Gen No. JM-1192 (1990) ("We
construe section 31.04 to govern only in instances in which a tax bill can be sent, but
is mailed late; it has no application in an instance in which no tax bill can be sent
because the name or address of the delinquent taxpayer is unknown. Our construction
of section 31.04 harmonizes any apparent conflict with other statutory provisions
[including subsection 31.01(g)] and renders any further reliance on abstruse
principles of statutory construction otiose."). Thus, in instances in which the
taxpayer's name or address is unknown, the "[f]ailure to send or receive the tax bill
required by [section 31.01] does not affect the validity of the tax, penalty, or interest,
the due date, the existence of a tax lien, or any procedure instituted to collect a tax." 
Tex. Tax Code Ann. § 31.01(g).

 Here, because it is undisputed that AISD and the County had Ogg's mailing
address for tax years 1984 through 1987, the provisions of section 31.04 applied. 
Therefore, we must determine whether tax bills were delivered for these years. If they
were not delivered, then the taxes were not delinquent, and interest and penalties did
not begin to accrue for tax years 1984 through 1987. 

 As previously discussed, because AISD and the County were entitled to the
presumption of delivery under section 33.47 for all years involved, the Oggs were
required to offer competent evidence to rebut this presumption. In this regard, Jack
Ogg testified that he did not receive tax bills for any of the years in question from
either AISD or the County. In addition to Ogg's testimony of non-receipt, the Oggs
introduced evidence, through the testimony of Brian Mackenzie, that AISD had failed
to mail notices for 1984 and 1985 by first-class mail; rather, Mackenzie testified that
notices for those years were mailed by "bulk-mail." And, as discussed above, the
Oggs also offered evidence that, in 1985, AISD may not have sent notices to the most
recent address in its records because, in other AISD internal records, a variation for
that address is shown, which is incorrect. The incorrect address was also used by
AISD in 1986 and 1987. Thus, a question arises whether AISD sent the tax bills for
tax years 1985, 1986, and 1987 to the correct address as found in its most recent tax
records at that time, or to the incorrect address as reflected in other internal records. 
 We conclude that such evidence, coupled with Oggs's testimony of non-receipt, was sufficient to overcome any presumption of delivery with regard to
AISD's tax bills for tax years 1984, 1985, and 1986. Once the Oggs overcame the
presumption, it was left to the trial court, as the trier of fact, to weigh the evidence. 
Viewing the evidence as we must, we conclude that legally and factually sufficient
evidence exists in the record to support the trial court's findings of fact that AISD
failed to deliver the required tax bills in 1984, 1985, 1986, and 1987. Accordingly,
the taxes never became "delinquent." Because the taxes for tax years 1984 through
1987 were not delinquent, AISD was not entitled to penalties and interest for those
years.

 Having concluded that legally and factually sufficient evidence exists in the
record to support the trial court's findings of fact that AISD failed to deliver the
required tax bills in 1984, 1985, 1986, and 1987, we next turn to whether the
evidence was legally and factually sufficient to support the trial court's finding that
the County failed to deliver tax bills for tax years 1984 through 1987. 

 While Ogg testified that he did not receive tax bills during the period of 1984
through 1987, he offered no evidence that the County failed to address the tax bills
to the address found in its most recent records, as required by the Tax Code. See Tex.
Tax Code Ann. § 1.07(b). Ogg did, however, testify that his address had changed
during the years in question. Although this may suggest that the County did not mail
the tax bills to Ogg's most current address, such evidence does not show that the
County did not mail the tax bills to the most recent address for Ogg that the County
had listed in its records. See id. Other than his own testimony of non-receipt, Ogg
offered no probative evidence to support his defensive theory that the County failed
to deliver the tax bills for those years. We conclude the evidence was legally
insufficient to support the trial court's findings of fact that the County failed to
deliver tax bills in 1984, 1985, 1986, and 1987.

 Moreover, we note that the County presented evidence that the tax bills for the
years at issue were mailed by first-class mail to the taxpayer at the most recent
address in possession of the Harris County tax office. Thus, even assuming that
Ogg's testimony of non-receipt alone was legally sufficient to support the trial court's
finding of non-delivery, we conclude that such evidence was not factually sufficient
to support the finding when weighed against the evidence introduced by the County
on this point. 

 e. Summary of Holdings Relating to Penalties and Interest 

 In conclusion, we hold that AISD is not entitled to penalties and interest for tax
years 1978 through 1983 because the evidence was sufficient to support the trial
court's finding that AISD failed to deliver a 33.04(b) notice in 1985. Thus, all
penalties and interest for tax years 1978 through 1983 were properly canceled
pursuant to section 33.04(c). We further hold that penalties and interest never began
to accrue on taxes owed to AISD for years 1984 through 1987 because the evidence
presented by the Oggs was sufficient to show that AISD had not delivered tax bills
for those years.

 With regard to the County, we hold that (1) the evidence was legally
insufficient to support the trial court's findings that the County failed to deliver the
required 33.04(b) delinquency notices to Harding and Carbone in 1990 and 1995 and
(2) the evidence was legally and factually insufficient to support the trial court's
findings that the County failed to deliver tax bills in 1984 through 1987. Thus, the
County is entitled to penalties and interest for tax years 1984 through 1987.

 We overrule AISD's first issue to the extent that we hold that the evidence was
legally and factually sufficient to support the trial court's findings of fact that the
33.04(b) notices of delinquency were not delivered in 1985, and that AISD failed to
deliver tax bills from 1984 through 1987. We sustain AISD's first issue and the
County's first, second, third, and fourth issues, to the extent that the evidence was
legally insufficient to support the trial court's findings of fact that (1) 33.04(b)
delinquency notices were not delivered in 1990 and 1995 and (2) the County failed
to deliver tax bills in 1984 through 1987.

B. Jurisdiction to Collect Penalties and Interest

 In the trial and on appeal, the Oggs complain that AISD and the County were
without "taxing jurisdiction" to levy penalties and interest associated with the taxes
owing on the property. (31) Specifically, the Oggs complain that "taxing jurisdiction"
did not attach because AISD and the County failed to send a notice of appraised value
as required by Tax Code section 25.19. See Tex. Tax Code Ann. § 25.19 (Vernon
2001). This is essentially a due process argument.

 Tax Code subsection 31.01(c) requires that tax bills include the appraised value
of the property. Tex. Tax Code Ann. § 31.01(c). Thus, for the years that we have
determined the evidence supports that the tax bills were "delivered" under the
presumption afforded the taxing units, we conclude that the Oggs received notice of
the appraised value of the property. 

 Because we have already concluded that the evidence is sufficient to support
the trial court's findings that AISD failed to deliver (1) tax bills in 1984 through
1987, and (2) the 33.04(b) delinquency notice in 1985, we have held that AISD is not
entitled to penalties and interest for any of the tax years at issue. Accordingly, the
disposition of AISD's and the County's issues discussed above renders the Oggs'
argument regarding lack of taxing jurisdiction moot.

C. Attorney's Fees and Costs 

 In its issue two, AISD contends that no legal authority or factual basis existed
for the trial court to deny its recovery of attorney's fees, court costs, and title research
fees. In addition, AISD contends that the tax master should have been awarded a fee
to be included as a cost of suit. In its issue five, the County argues that the trial court
erred in denying its recovery of attorney's fees and court costs. 

 Both AISD and the County argue that it is not within the trial court's discretion
to deny the award of attorney's fees and costs under the Tax Code; rather, they
contend code section 33.48 mandates such an award. Tax Code section 33.48
provides, in part, as follows:

 (a) In addition to other costs authorized by law, a taxing unit is
entitled to recover the following costs and expenses in a suit to
collect a delinquent tax:


 (1) all usual court costs, including the cost of serving
process;


 (2) costs of filing for record a notice of lis pendens against
property;


 (3) expenses of foreclosure sale;


 (4) reasonable expenses that are incurred by the taxing unit
in determining the name, identity, and location of
necessary parties and in procuring necessary legal
descriptions of the property on which a delinquent tax is
due;


 (5) attorney's fees in the amount of 15 percent of the total
amount of taxes, penalties, and interest due the unit . . . .


Tex. Tax Code Ann. § 33.48(a) (Vernon 2001). 


 The taxing units point out that the Texas Supreme Court has stated, "[s]tatutes
providing that a party 'may recover,' 'shall be awarded,' or 'is entitled to' attorney
fees are not discretionary." Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998)
(emphasis added). Here, section 33.48 clearly contains the "entitled to" language
making an award of attorney's fees and the other enumerated costs and fees
mandatory in a suit to collect a delinquent tax. Tex. Tax Code Ann. § 33.48(a). The
Oggs contend that an award of attorney's fees and costs under section 33.48 is not
appropriate because this was not a suit for "delinquent" taxes. We agree that, by its
express language, section 33.48 applies to "a suit to collect a delinquent tax." Id.
(emphasis added). Under the statute's plain language, it follows that if a tax is not
delinquent, then section 33.48 does not apply. Thus, whether the Oggs owed the
County and AISD attorney's fees was dependent on whether any of the taxes owed
to AISD and the County for tax years 1978 through 1987 were "delinquent."

 We have already determined that, because the evidence is insufficient to show
that the County failed to deliver tax bills in 1984 through 1987, the taxes owed to the
County for those tax years were delinquent. Accordingly, the trial court erred in
failing to award attorney's fees and court costs as requested by the County under the
mandatory provisions of section 33.48. We hold that the County is entitled to
attorney's fees and costs of court.

 As discussed above, under code section 31.04 a tax is not "delinquent" if the
taxing unit has not delivered a tax bill when it has a known address. See Tex. Tax
Code Ann. §§ 31.02, 31.04(a), (e). Here, we have concluded that because the
evidence was sufficient to show that AISD failed to deliver the required tax bills, the
taxes owed to AISD were not delinquent for years 1984 through 1987. However,
because it was unnecessary to the disposition of the preceding points, we have not yet
determined whether any of the taxes owed to AISD for tax years 1978 through 1983
were "delinquent." 

 1. 1982 and 1983

 We begin by determining whether the taxes for tax years 1982 and 1983 were
"delinquent." 

 Because it did not have Ogg's mailing address, AISD did not deliver tax bills
to Ogg for tax years 1982 and 1983. For those years, the evidence showed that
AISD's tax rolls listed the property under the name "Ogg Jack C" with an address of
"ZZZ." Under such circumstances, the relevant inquiry becomes as follows: If a
taxing unit cannot mail a tax bill because it does not have an address for the taxpayer,
are the taxes ever considered delinquent? As cited above, the attorney general has
answered this question in the affirmative. See Op. Tex. Att'y. Gen. No. JM-1192
(1990).

 In JM-1192, the attorney general concluded as follows:

 [S]ection 31.04 of the Tax Code does not govern in instances in which
no tax bill can be sent because the name or address of the taxpayer is
unknown; it governs only in situations in which a tax bill can be mailed
but is mailed late. In an instance in which no bill can be mailed because
the address of the taxpayer is unknown, section 31.02 of the code, which
provides that the delinquency date is February 1 of the year after the
taxes are imposed, controls the establishment of a deliquency [sic] date.


Id.

 The attorney general provided two reasons for this conclusion. First, statutes
must be construed in pari materia in such a way as to harmonize any conflicts, if such
a construction is possible. Id. Construing section 31.04 to govern in instances in
which the tax bill is mailed late, but not in instances in which the tax bill cannot be
sent because the name or address of the delinquent taxpayer is unknown, harmonizes
section 31.04 with other conflicting provisions of the Tax Code. Id. 

 Second, statutory provisions must be construed in such a way that will not lead
to absurd or ridiculous consequences. Id. The attorney general noted that Tax Code
section 33.41 permits a taxing unit, at any time after a tax on property becomes
delinquent, to file suit to foreclose a tax lien. Id. The attorney general stated, "[I]f 
section 31.04 of the code were construed to reach situations in which no tax bill was
sent because the address of the delinquent taxpayer was unknown, then the section
would effectively prohibit the establishment of a delinquency date and no taxes could
ever be collected on such property." Id. The attorney general concluded that nothing
in the Tax Code indicated that the legislature intended such a result. Id.

 Although attorney general's opinions are not controlling on the courts, they are
persuasive. Comm'rs Court of Titus County v. Agan, 940 S.W.2d 77, 82 (Tex. 1997). 
We find the reasoning and conclusion of attorney general opinion JM-1192 to be
persuasive. Because AISD did not have Ogg's mailing address for tax years 1982 and
1983, we conclude, pursuant to Tax Code section 31.02, that the taxes for those years
became "delinquent" on February 1 of the year after the taxes were imposed. See
Tex. Tax Code Ann. § 31.02(a). 

 2. 1978 through 1981

 We next determine whether the taxes owed to AISD for tax years 1978 through
1981 were "delinquent." Like tax years 1982 and 1983, the record reflects that AISD
had no mailing address for Ogg for tax years 1978 through 1981. During this period,
AISD's tax records listed the property in the name of "Ogg Jack C" and listed an
address of either "Houston, Tx" or "ZZZ." 

 Except for limited provisions not relevant to this issue, the Tax Code became
effective on January 1, 1982. (32) Before that time, the laws governing ad valorem
taxation by school districts were found in the civil statutes and the Education Code.

During tax years 1978 through 1981, now-repealed subarticle 7336(b) provided that
ad valorem taxes "shall become delinquent if not paid prior to February first of the
year next succeeding the year" for which they are to be paid. (33) During the same
period, now-repealed Education Code subsection 20.03(f) required that the assessor
for each school district prepare and mail a tax bill to each person in whose name the
property was listed on the tax roll. (34) However, unlike the current Tax Code, no
statute provided for the delinquency date to be postponed until a tax bill had been
mailed. See Tex. Tax Code Ann. § 31.04(a). Rather, under the governing statutory
provisions, the taxes owed by Ogg to AISD for tax years 1978 through 1981 became
"delinquent" when they were not paid by February 1 of the year succeeding the year
for which they were owed, regardless of whether AISD had mailed a tax bill to the
correct address. 

 We hold that, because AISD's suit was to collect delinquent taxes for tax years
1978 through 1983, AISD was entitled to attorney's fees, court costs, and title search
fees associated with the collection of delinquent taxes for those years. See Tex. Tax
Code Ann. § 31.48. 

 With regard to the tax master's fee, subsection 33.73(b) of the Tax Code states,
"The Court shall award reasonable compensation to the master to be taxed as costs
of suit." Tex. Tax Code Ann. § 33.73(b) (Vernon 2001) (emphasis added). Thus,
under the mandatory language of that subsection, we hold that the trial was required
to award the tax master "reasonable compensation" to be determined as costs of suit.

 Insofar as the taxes owed to AISD for tax years 1978 through 1981 were
delinquent, we sustain the portion of AISD's issue two relating to the award of
attorney's fees, court costs, including the award of a tax master's fee, and title search
fees. We sustain the County's issue five.

D. Post-Judgment Interest

 AISD also complains in its issue two that the trial court erred in failing to
award post-judgment interest. In the County's issue six, it also challenges the trial
court's failure to award post-judgment interest. 

 Tax Code section 33.01(c) provides that a "delinquent tax continues to accrue
interest under this subsection as long as the tax remains unpaid, regardless of whether
a judgment for the delinquent tax has been rendered." Tex. Tax Code Ann. §
33.01(c) (Vernon 2001). In addition, section 33.55 provides that a "judgment for
delinquent taxes does not affect the accrual after the date of the judgment of penalties
and interest under this chapter on the taxes included in the judgment." Tex. Tax
Code Ann. § 33.55 (Vernon 2001). Therefore, to the extent that we have held that
the County is entitled to interest on the unpaid taxes, we hold that, under sections
33.01(c) and 33.55, the County was also entitled to post-judgment interest. 
Conversely, because AISD was not entitled to interest on the unpaid taxes as
discussed above, it is not entitled to post-judgment interest under subsection 33.01(c)
and section 33.55. 

 We overrule AISD's issue two as it relates to post-judgment interest; we
sustain the County's issue six. (35) 

Conclusion


 We affirm the portion of the trial court's judgment that denies AISD penalties
and interest. We reverse the portions of the trial court's judgment that denies the
County penalties, interest, attorney's fees, and court costs, and the portion that denies
AISD attorney's fees and court costs and title search fees. In accordance with this
opinion, we remand the cause to the trial court (1) for determination of (a) the amount
of interest and penalties to be awarded the County; (b) the amount of attorney's fees
and court costs to be awarded the County; (c) a reasonable tax master's fee to be
included as a cost of suit; and (d) the amount of attorney's fees, court costs, and title
research fees, to be awarded AISD; and (2) for entry of judgment, which awards the
County post-judgment interest.





 Lee Duggan, Jr. (36)

 Justice

 

Panel consists of Justices Hedges, Keyes, and Duggan.
1. The other taxing units included with Harris County when we refer to "the
County" are Harris County Education Department, Port of Houston of Harris
County, Harris County Flood Control District, Harris County Hospital District,
and the North Harris Montgomery Community College District. The Harris
County Tax Assessor/Collector collects taxes for the City of Houston. For
simplicity, we also include the City of Houston when we reference "the
County." 
2. Following payment of the taxes, interest, penalties, and attorney's fees for tax
years 1995 through 1999, the parties stipulated that judgment was sought
against Connie Ogg in rem only.
3. Although it has been amended several times since its enactment in 1985,
section 33.011 has always provided a process for a taxpayer to request a waiver
of penalties and interest if the act or omission of an officer, employee, or agent
of the appraisal district or taxing unit caused or resulted in the taxpayer's
failure to pay the tax before delinquency. See Tex. Tax Code Ann. § 33.011
(Vernon 2001). Here, the trial court stated in a finding of fact that the Oggs
did not request a waiver of penalties or interest pursuant to section 33.011. 
The parties do not challenge that particular finding of fact. See McGalliard v.
Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986) (holding unchallenged findings
of fact are binding unless contrary is established as matter of law or there is no
evidence to support finding).
4. Act of May 24, 1979, 66th Leg., R.S., ch. 841, § 1, 1979 Tex. Gen. Laws 2217.
5. Id. § 33.04.
6. Any reference to "the code" will be to the Tax Code unless otherwise indicate.
7. Act of May 24, 1979, 66th Leg., R.S., ch. 841, § 33.40, 1979 Tex. Gen. Laws
2217, 2290 amended by Act of August 10, 1981, 67th Leg., 1st C.S., ch. 13, §
128, sec. 33.04, 1981 Tex. Gen. Laws 117, 168, amended by Act of May 26,
1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex. Gen. Laws 2600,
2601, amended by Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec.
33.04, 1999 Tex. Gen. Laws 5097, 5101, amended by Act of May 15, 2001,
77th Leg., R.S., ch. 1430, § 11, sec. 3401, 2001 Tex. Gen. Laws 5109, 5112.
8. Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex. Gen.
Laws 2600, 2601.
9. Id. § 2.
10. Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec. 33.04, 1999 Tex.
Gen. Laws 5097, 5101.
11. Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 43(c), 1999 Tex. Gen. Laws
5097, 5114.
12. Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 45, 1999 Tex. Gen. Laws
5097, 5114.
13. AISD and the County contend that the 1999 version of section 33.04 should
apply in this case. However, as stated above, the 1999 amendatory language
to section 33.04 states that the amended language applies only to notices sent
in 2000 and after. 
14. The trial court made a finding of fact that AISD and the County had not
delivered a five-year notice of delinquency to the Oggs in 2000. It is important
to note that AISD filed suit against the Oggs in October 1998 and the County
intervened in February 1999. The proceeding before the tax master was held
in February 2000, and the trial de novo before the district court occurred in
July 2000. Under the circumstances, sending a delinquency notice to then-property owner Connie Ogg, would have served little purpose in affording the
Oggs due process and is not determinative in deciding whether the taxing units
are entitled to penalties and interest.
15. Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex. Gen.
Laws 2600, 2601.
16. In a finding of fact, the trial court stated as follows: "'[C]ompetent evidence'
was introduced by [the Oggs] to rebut the presumptions established by virtue
of the taxing jurisdictions' prima facie case."
17. In addition to the presumption of delivery accorded the taxing units under
section 33.47, Tax Code section 1.07 provides for the presumption of delivery
of notice upon the notice's deposit in the mail for delivery by first-class mail. 
Tex. Tax Code Ann. § 1.07(c) (Vernon 2001). Courts have defined what
conditions are necessary to establish this presumption. Dallas County
Appraisal Dist. v. Lal, 701 S.W.2d 44, 47-48 (Tex. App.--Dallas 1985, writ
ref'd n.r.e.) (discussing eight factors viewed in determining whether
presumption of delivery is available). However, it was unnecessary for AISD
and the County to establish the presumption of delivery pursuant to section
1.07 because each established every material fact necessary to prove its cause
of action pursuant to section 33.47, including the delivery of the required
notices.
18. Here, the taxing units did not have the burden of proof as to the issue of which
they complain the evidence is insufficient. It is undisputed that the taxing units
proved their prima facia case, including delivery of the required notices, when
they introduced their official tax records. Thus, the relevant question on appeal
is whether the evidence offered by the Oggs was legally and factually sufficient
to rebut the presumption of delivery accorded the taxing units under code
section 33.47. This is an issue on which the Oggs had the burden of proof.
19. The County was not required to deliver a five-year delinquency notice to Jack
Ogg in 1985 because he did not owe "a tax that has been delinquent more than
one year" to the County. Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1,
sec. 33.04, 1985 Tex. Gen. Laws 2600, 2601. The first tax year for which the
County sought delinquent taxes was 1984. The taxes for that year would not
have been delinquent until after February 1, 1985, and would not have been
delinquent for "more than one year" until February 1, 1986. See Tex. Tax
Code § 31.02(a) (Vernon 2001). Thus, the first 33.04(b) notice that the
County was required to send was in 1990.
20. As previously mentioned, AISD stipulated that collection of the delinquent
taxes owed for tax year 1977 was barred by the statute of limitations and only
sought collection for tax years 1978 through 1987 in this suit.
21. Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex. Gen.
Laws 2600, 2601.
22. Id.
23. Subsection (b) was amended in 1989 and made effective September 1, 1989. 
Act of May 26, 1989, 71st Leg., R.S., ch. 796, § 1, sec 1.07(b), 1989 Tex. Gen.
Laws 3591, 3591. Subsection (b) has not been subsequently amended.
24. Brian Mackenzie testified in two capacities at trial--as a former tax appraiser
with AISD and as an employee of Harding and Carbone. 
25. Section 1.11 has not been amended since enactment in 1981.
26. Though the trial court made specific findings of fact that AISD and the County
failed to deliver the 33.04(b) notices to Harding and Carbone in 1990, the court
did not make similar findings for 1995. However, the trial court made general
findings of fact that none of the notices required by law had been delivered by
the taxing units. This would necessarily include the 33.04(b) notices required
to be delivered in 1995. 
27. The 1985 version of subsection (a) stated, "the notice need not be delivered if
a bill for the tax was not mailed pursuant to the authorization provided by 
Section 31.01(f) of this code." Act of May 26, 1985, 69th Leg., R.S., ch. 761,
§ 1, sec. 33.04, 1985 Tex. Gen. Laws 2600, 2601. However, subsection (f) of
31.01 does not apply in this case.
28. Id.
29. This was also the requirement for tax years 1985, 1986, and 1987 under the
Tax Code.
30. The language of subsection (g) has not been amended since section 33.01's
enactment.
31. The trial court stated in a conclusion of law as follows: "[AISD] and [the
County] failed to acquire taxing jurisdiction over all the property made the
subject of this lawsuit, which is an element necessary to any recovery by
them." However, we are not bound by the trial court's conclusions of law. 
Connelly v. Paul, 731 S.W.2d 657, 661 (Tex. App.--Houston [1st Dist.] 1987,
writ ref'd n.r.e.). 
32. Act of May 24, 1979, 66th Leg., R.S., ch. 841, § 1, 1979 Tex. Gen. Laws 2217.
33. Act of May 12, 1939, 46th Leg., R.S., ch. 16, § 3, 1939 Tex. Gen. Laws 654,
655-57, repealed by Act of May 24, 1979, 66th Leg., R.S., ch. 841, § 6, 1979
Tex. Gen. Laws 2217, 2329-30. 
34. Act of July 15, 1977, 65th Leg. 1st C.S., ch. 1, § 15, sec. 20.03, 1977 Tex. Gen.
Laws 11, 27-29, repealed by Act of May 24, 1979, 66th Leg., R.S., ch. 841, §
6, 1979 Tex. Gen. Laws 2217, 2329-30. 
35. Because of the disposition of the preceding issues, we need not discuss any
remaining issues or sub-issues not discussed above, including the County's
issue seven attacking the trial court's judgment on the ground that, to the
extent the trial court's judgment extinguishes interest that has accrued since
August 26, 1991, it violates Article III, § 55 of the Texas Constitution.
36. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.