**HOUSTON INDEPENDENT SCHOOL DISTRICT, City of Houston, Harris County, Harris County Education Department, Port of Houston Authority of Harris County, Harris County Flood Control District, Harris County Hospital District, and Houston Community College System, Appellants,**

v.

**OLD FARMS OWNERS ASSOCIATION, INC., Westheimer Old Farms I, Ltd., Susan C. Lee, Trustee of the Trust Created Under Article IV of the Will of Katherine P. Barnhart, Deceased, and David Nguyen Individually and d/b/a David Nguyen Construction, Appellees.**

No. 01–04–00538–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 26, 2007.

Rehearing Overruled Sept. 25, 2007.

Jose Padilla, Linebarger Goggan Blair & Sampson, LLP, El Paso, F. Duane Force, Linebarger Goggan Blair & Sampson, LLP, Ernest C. Garcia, Linebarger, Goggan, Blair, Pena & Sampson, LLP, Austin, TX, for Appellants.

Sarah A. Duckers, Stephen A. Kuntz, Fulbright & Jaworski L.L.P., Arne M. Ray, Ray & Associates, Thomas A. Zabel, Zabel Freeman, L.L.P., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

In this ad valorem tax case, the appellant taxing authorities, which include Harris County and other taxing units,[1] challenge the trial court's decision that the taxing units are not entitled to penalties and interest for delinquent taxes owed for tax year 1997 on 4.3 acres of real property. In this regard, the taxing units raise two issues on appeal.

We reverse and remand.

## Background

On January 1, 1997, the Trust Created under Article IV of the Will of Katherine P. Barnhart, Deceased ("the Article IV Trust" or "the trust") owned approximately 4.3 acres of property ("the property") in Houston. At the time, Ronald E. Lee was the trustee. Mr. Lee officed at 1706 Post Oak Boulevard in Houston and had been at that location since 1993. From 1993 until 1996, Mr. Lee received tax statements for the property at that address, and the Article IV Trust paid the taxes on the property for those years.

On July 18, 1997, the trust sold 4.2562 acres of the property to Westheimer Old Farm Ltd. The trust retained ownership of the remaining .0609 acres of the property.[2] Related to the sale and division of the property, the records of the Harris County Appraisal District ("HCAD") contain a "Request for Records Maintenance" form dated September 2, 1997. On the form, HCAD listed Mr. Lee's address as 4550 Post Oak Place, Suite 123, in Houston. Mr. Lee had not officed at that address since approximately 1986, and it was an incorrect address for Mr. Lee in 1997. HCAD provided that address to the Harris County tax collector's office for use in mailing out tax notices on the property. As a result, the 1997 tax bill for the property was mailed by the Harris County tax collector to Mr. Lee at the incorrect 4550 Post Oak Place address. Mr. Lee did not receive the 1997 tax bill, and it was returned to the Harris County tax office as "undeliverable." The trust did not pay the 1997 taxes on the property.

The address error was corrected in HCAD's records in 1999. At that time, HCAD provided the correct address to the Harris County tax collector's office to use in sending out tax notices. Also in 1999, the taxing units filed suit against Mr. Lee, as trustee, to recover the delinquent 1997 taxes for the property.[3] The taxing units later nonsuited that action in 2000.

In 2002, the taxing units again filed suit to recover the 1997 taxes. The suit named the following as defendants: Old Farms

---

1. The other taxing units are Houston Independent School District, the City of Houston, Harris County Education Department, Port of Houston Authority of Harris County, Harris County Flood Control District, Harris County Hospital District, and Houston Community College System. It appears that the Harris County Tax Collector–Assessor collects taxes for the taxing units in this case.

2. In 2001, the trust conveyed the .0609 acres to Old Farms Owners Association, Inc.

3. Although the majority of the property had been sold to Westheimer Old Farm Ltd. in July 1997, the trust was the record property owner for the entire 4.3 acres on January 1, 1997.

Owners Association, Inc., Westheimer Old Farms I, Ltd., Susan C. Lee, Trustee of the Trust Created under Article IV of the Will of Katherine P. Barnhart, Deceased, and David Nguyen, Individually and d/b/a David Nguyen Construction.[4]

The case was initially heard by a tax master. At the hearing before the tax master, the Article IV Trust argued that the penalties and interest associated with the 1997 taxes were canceled based on the 1985 amendment to Tax Code section 33.04.[5] Subsection (b) of that act required taxing units in each year divisible by five to deliver by mail a written notice of delinquency to each person who owes a tax that has been delinquent more than one year.[6] The Article IV Trust asserted that, under this provision, the taxing units were required to send the trust a delinquency notice in 2000. Mr. Lee testified that he had never received a delinquency notice. The Article IV Trust further pointed out that subsection (c) of that act mandated cancellation of penalties and interest if the taxing units did not deliver the subsection (b) delinquency notice.[7] The Article IV

Trust contended that, because the taxing units had not delivered a delinquency notice to its trustee in 2000, the taxing units were not entitled to penalties and interest for the 1997 taxes.

In contrast, the taxing units contended that the 2001 amendment of section 33.04 applied, not the 1985 amendment. The effective date of the 2001 act was September 1, 2001.[8] Under the 2001 act, a taxing unit's failure to deliver a delinquency notice does not result in cancellation of penalties and interest.[9]

Citing a savings clause in the 2001 act, the Article IV Trust argued that the 1985 version of section 33.04 applies in this case. The savings clause provides, in part, "A delinquent tax that is the subject of a collection suit filed before the effective date [of September 1, 2001] of this Act is governed by Section 33.04, Tax Code, as that section existed immediately before the effective date of this Act, and the former law is continued in effect for that purpose."[10] The trust asserted that, pursuant to the savings provision, the 1985 version of section 33.04 applied because a suit to

---

4. At the time, Mr. Lee was no longer the trustee of the Article IV trust. The new trustee was Susan C. Lee. It appears that David Nguyen, individually and d/b/a David Nguyen Construction was named as a defendant because he had a lien on the property. Although identified as appellees, Westheimer Old Farms I, Ltd. and David Nguyen individually and d/b/a David Nguyen Construction have not filed briefs in this appeal. Appellees Old Farms Owners Association, Inc. and Susan C. Lee, Trustee of the Trust Created under Articles IV of the Will of Katherine P. Barnhart, Deceased have filed a joint responsive brief to appellants' brief.

5. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex. Gen. Laws 2600, 2601.

6. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04(b), 1985 Tex. Gen. Laws 2600, 2601.

7. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04(c), 1985 Tex. Gen. Laws 2600, 2601.

8. Act of May 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122–23.

9. *See* TEX TAX.CODE ANN. § 33.04 (Vernon 2001); *see also* Act of May 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122 ("Penalties and interest on a delinquent tax are not canceled under Section 33.04, Tax Code, for failure to deliver any notice under that section as it existed immediately before the effective date [of September 1, 2001] of this Act.").

10. Act of May 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122.

collect the 1997 taxes had been filed by the taxing units before the 2001 act's effective date of September 1, 2001. Specifically, the trust pointed out that the taxing units had filed suit in 1999 against its trustee to collect the 1997 taxes. The taxing units responded that it had nonsuited the 1999 suit before the effective date of the 2001 act. Thus, the taxing units argued, the 1999 suit could not serve to continue the effectiveness of section 33.04 as it existed before the effective date of the 2001 act.

The Article IV Trust also asserted that penalties and interest may be awarded only on a "delinquent" tax. The trust points out that a tax becomes delinquent only when a tax bill has been delivered to the taxpayer. The trust asserted that it had not received a bill for the 1997 tax year. The trust offered evidence that the 1997 tax bill had been sent to the incorrect 4550 Post Oak Place address and that the tax bill had been returned to the Harris County tax collector's office as "undeliverable." Mr. Lee testified that he never received a tax bill for the 1997 tax year.

By offering into evidence certified tax records showing the amount of base taxes, penalties, and interest for the property, the taxing units asserted that, pursuant to Tax Code section 33.47, they established a prima facie case regarding every material fact necessary to prove their cause of action.[11] This included a rebuttable presumption that the taxing units had properly sent the 1997 tax bill to the trust. The taxing units contended that the trust had not rebutted this presumption. The taxing units pointed out that the evidence showed that the 1997 tax bill was mailed to the most recent address provided to the Harris County tax collector's office by HCAD. The taxing units asserted that, by mailing the tax bill to the most recent address

provided by HCAD, they had done all that was legally required.

At the conclusion of the hearing, the tax master recommended that the taxing units recover the 1997 base taxes, but not recover penalties and interest on those taxes. The tax master's report contains findings in support of his recommendation regarding the penalties and interest. The tax master found that the trustee never received notice of the taxes. The tax master also found that penalties and interest on the 1997 taxes were waived because the Article IV Trust, through its trustee, had not received a delinquency notice as required by the 1985 version of Tax Code section 33.04 and as discussed in *Aldine Independent School Dist. v. Ogg*, 122 S.W.3d 257 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

The taxing units appealed the tax master's recommendation to the referring district court. The parties agreed that base taxes were owed on the property for the 1997 tax year. The issue that was tried to the trial court was whether the taxing units were entitled to recover penalties and interest for the 1997 taxes. The parties supported their respective positions with the same arguments that each had made to the tax master.

The evidence admitted at the tax master hearing was admitted in the trial court. In addition, the taxing units admitted a copy of a delinquent tax notice that had been sent to Mr. Lee at his correct address in 2000. The notice stated the amount of 1997 base taxes, penalties, and interest owed on the property. Mr. Lee testified that he had never received a copy of any delinquency notices, despite the fact that the record shows Harris County had his correct address.

11. TEX. TAX CODE ANN. § 33.47(a) (Vernon 2001).

Following a de novo bench trial, the district court signed a judgment "overruling" the taxing units appeal and adopted the tax master's findings as indicated in the master's report. The trial court awarded the taxing units judgment against the Article IV Trust, as owner of the 4.3 acres on January 1, 1997, "for the full amount of the taxes owed for the 1997 tax year in the amount of $51, 208.75." The district court also ordered that the Article IV Trust was entitled to reimbursement from Westheimer Old Farms I for a pro rata share of the 1997 taxes.[12] Consistent with the tax master's findings and recommendation, the district court's judgment did not award the taxing units penalties and interest relating to the 1997 taxes. Other than adopting the findings of the tax master, the district court did not file separate findings of fact and conclusions of law, and none were requested by the parties.

Raising two issues, the taxing units challenge the district court's judgment to the extent that it does not award the taxing units penalties and interest for the 1997 taxes.

### Tax Code Section 33.04

■ In their first issue, the taxing units challenge the trial court's determination that the 1985 version of Tax Code section 33.04 applied to the instant litigation rather than the 2001 version of that statute. Determining which version of section 33.04 applies in this case is a question of law; accordingly, our review is de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006).

The taxing units contend, as they did in the trial court, that the amendatory language of the 2001 act applies in this case. We agree.

The savings provision accompanying the 2001 amendatory language provides as follows:

Section 33.04, Tax Code, as amended by this Act, does not apply to taxes subject to a delinquent tax suit pending before the effective date of this Act [i.e., September 1, 2001]. Section 33.04, Tax Code, as amended by this Act, applies to all other taxes that became delinquent before the effective date of this Act or that become delinquent on or after that date. Penalties and interest on a delinquent tax are not canceled under Section 33.04, Tax Code, for failure to deliver any notice under that section as it existed immediately before the effective date of this Act. A delinquent tax that is the subject of a collection suit filed before the effective date of this Act is governed by Section 33.04, Tax Code, as that section existed immediately before the effective date of this Act, and the former law is continued in effect for that purpose.

Act of May 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122.

■ The instant litigation was filed in 2002; thus, under the savings provision, the 2001 amendatory language governs in this case. We disagree with the position taken by the Article IV Trust that, because the taxing units had filed suit in 1999 against the trust, the earlier version of section 33.04 applies, regardless of the fact that the action was nonsuited in 2000. When a party nonsuits an action, the parties are placed back in the same positions as before the filing of the suit. *Hagberg v. City of Pasadena*, 224 S.W.3d 477, 483 (Tex.App.-Houston [1st Dist.], 2007, no pet.); *see Crofts v. Court of Civil Appeals*, 362 S.W.2d 101, 104 (Tex.1962); *Parker v.*

---

**12.** The 1997 purchase agreement between Westheimer Old Farms I and the trust provided that the 1997 taxes be pro rated.

*JPMorgan Chase Bank*, 95 S.W.3d 428, 432 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Ashpole v. Millard*, 778 S.W.2d 169, 171 (Tex.App.-Houston [1st Dist.] 1989, orig. proceeding). In other words, we treat the 1999 suit as if it had never been filed. *See Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex.App.-Dallas 2005, no pet.). For this reason, we conclude that the 2001 amendatory language governs in this case.[13] The trial court incorrectly determined that the 1985 amendment of 33.04 applied.[14] Pursuant to the 2001 act, any failure by the taxing units to properly deliver the delinquency notice in 2000 does not mandate cancellation of penalties and interest for the 1997 taxes. *See* Act of May 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122 ("Penalties and interest on a delinquent tax are not canceled under Section 33.04, Tax Code, for failure to deliver any notice under that section as it existed immediately before the effective date [of September 1, 2001] of this Act.").

We sustain the taxing units' first issue.

### 1997 Tax Bill

In the tax master proceeding and in the trial court, the Article IV Trust asserted that the 1997 tax never became delinquent because the 1997 tax bill was neither sent to nor received at Mr. Lee's current address. Thus, the taxing units were not entitled to penalties and interest. In their second issue, the taxing units contend that the Article IV Trust did not present legally or factually sufficient evidence to rebut the presumption that the taxing units met their statutory burden with regard to delivery of the 1997 tax bill.

Tax bills must be mailed by October 1 of the year for which taxes are assessed, or as soon thereafter as practicable. TEX. TAX CODE ANN. § 31.01(a) (Vernon Supp. 2006). Taxes are due on receipt of the tax bill and are delinquent if not paid by February 1 of the year following the year imposed. TEX. TAX CODE ANN. § 31.02(a) (Vernon Supp.2006). In *Ogg*, we explained that, if a taxing unit has an address for a taxpayer on its tax roll, but nonetheless fails to meet the statutory requirements with regard to the sending of the tax bill to the taxpayer, the tax never becomes "delinquent," and penalties and interest cannot be collected. *See* 122 S.W.3d at 270–71. As discussed in *Ogg*, a taxing unit is required only to mail the tax bills to the

---

**13.** Although not raised by the parties, the question arises whether the 1999 amendment to 33.04 governs. Pursuant to former 33.04(b), the five-year delinquency notice here was required to be given in 2000, i.e., the first year after 1997 divisible by five. The 1999 amendment became effective January 1, 2000, Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 43(c), 1999 Tex. Gen. Laws 5097, 5114, and applied to 33.04(b) notices given in and after 2000. Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 45, 1999 Tex. Gen. Laws 5097, 5114. The 1999 amendment deleted the language requiring cancellation and made failure to deliver the subsection (b) notice an affirmative defense. Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec. 33.04(d) 1999 Tex. Gen. Laws 5097, 5101. The 1999 amendatory language added that penalties and interest were reinstated "if sub-sequent to the collector's failure to deliver the notice required by Subsection (b), the collector delivers the notice in any subsequent year divisible by five." Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec. 33.04(e) 1999 Tex. Gen. Laws 5097, 5101.

**14.** We also note that the specific holding of *Aldine Independent School Distrtict v. Ogg* is inapposite to the determination of whether penalties and interest were properly cancelled for failure to deliver a section 33.04(b) notice in this case. 122 S.W.3d 257 (Tex.App.-Houston [1st Dist.] 2003, no pet.). In *Ogg*, the 1985 version of section 33.04 applied. *Id.* at 263. As discussed, that version does not govern the delinquency notice at issue in this case.

address found in its most recent records. *Id.* at 271 (citing TEX. TAX CODE ANN. § 1.07(b)).

 Tax Code subsection 33.47(a) addresses evidentiary concerns in delinquent tax cases and provides as follows:

> (a) In a suit to collect a delinquent tax, the taxing unit's current tax roll and delinquent tax roll or certified copies of the entries showing the property and the amount of the tax and penalties imposed and interest accrued constitute prima facie evidence that each person charged with a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts.

TEX. TAX CODE ANN. § 33.47(a) (Vernon 2001). Once the taxing unit introduces these records, it establishes a prima facie case as to every material fact necessary to establish its cause of action. *Davis v. City of Austin,* 632 S.W.2d 331, 333 (Tex.1982); *Ogg,* 122 S.W.3d at 264. When the taxing unit establishes a prima facie case in a tax delinquency suit, a rebuttable presumption arises that the taxing entity has taken all actions necessary to obtain legal authority to levy the tax, including proper delivery of all required tax notices. *Ogg,* 122 S.W.3d at 264.

 Here, the taxing units introduced certified copies of tax statements from the Harris County tax collector's office showing the delinquent taxes, penalties, and interest owing for the property. Accordingly, the taxing units were entitled to a presumption that they satisfied the statutory requirements entitling them to collect the penalties and interest for the 1997 tax. *See* TEX. TAX CODE ANN. § 33.47(a); *Ogg,* 122 S.W.3d at 264. This would include the presumption that the 1997 tax bill was sent to the Article IV Trust as statutorily required. *See Ogg,* 122 S.W.3d at 264.

 After the taxing units made their prima facie case by introducing the official tax records, the burden then shifted to the Article IV Trust to show, by introducing competent evidence, that the taxing units had not satisfied the statutory requirements. *See id.* The presumption created by section 33.47 disappears if and when the taxpayer meets its burden of producing competent evidence to justify a finding against the presumed fact. *Id.* In other words, once the 33.47 presumption is established, the trust had the burden "to go forward with [its] defensive evidence" regarding whether the taxing units properly transmitted the tax bill. *See id.* We determine whether the trust offered legally and factually sufficient evidence to rebut this presumption.

 In an appeal from a bench trial, findings of fact have the same weight as a jury's verdict on special issues. *Lee v. Lee,* 981 S.W.2d 903, 905 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). We review the legal and factual sufficiency of the evidence supporting a trial court's findings of fact by the same standards that we apply to reviewing the legal or factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). Thus, if the complaining party challenges the legal sufficiency of the evidence underlying an adverse finding on which the party did not have the burden of proof, then the party must demonstrate on appeal that there is no evidence to support the finding. *Gennedy,* 125 S.W.3d at 691. In such a review, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor, and disregard all evidence and inferences to the contrary. *Id.* at 692. We do

not disregard contrary evidence if there is no favorable evidence, or if contrary evidence renders supporting evidence incompetent or conclusively establishes the opposite. *City of Keller v. Wilson,* 168 S.W.3d 802, 810–11 (Tex.2005). If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Gennedy,* 125 S.W.3d at 692.

In our review of factual sufficiency of the evidence, we must consider and weigh all of the evidence. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986). We will set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

Here, the evidence relied on by the trust showed that the taxing units did not mail the 1997 tax bill to Mr. Lee at his current address. The evidence also showed that Mr. Lee did not receive a copy of the 1997 tax bill and that the bill was returned to the tax collector as "undeliverable." Although this may suggest that the taxing units did not mail the tax bills to Mr. Lee's most current address, such evidence does not show that the taxing units did not mail the tax bills to the most recent address for Mr. Lee that the Harris County tax collector had listed in its records, as statutorily required. *See* Tex. Tax Code Ann. § 1.07(b) (Vernon Supp.2006); *Ogg,* 122 S.W.3d at 271. To the contrary, the evidence shows that the taxing units mailed the tax bill to the most recent address contained in the Harris County tax rolls, which address had been provided by HCAD to the tax collector's office. We conclude that legally insufficient evidence was presented to rebut the presumption that the taxing units properly sent the 1997 tax bill. Accordingly, no evidence supports a conclusion that the taxing units should be denied penalties and interest because the 1997 tax was never "delinquent." [15]

We sustain the taxing units second issue.[16]

## Conclusion

We conclude that the two bases argued by the Article IV Trust and relied on by the trial court to deny the taxing units' claim for penalties and interest are unfounded. We hold that the trial court erred by denying the taxing units' request for penalties and interest on the 1997 taxes. Accordingly, we reverse the portion of the trial court's judgment denying the taxing units' request for penalties and interest and remand the case for the limited purpose of determining the amount of interest and penalties to be awarded the taxing units. *See* Tex.R.App. P. 43.3.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

I respectfully dissent because I believe the majority's opinion erroneously undoes the savings clause in amended section 33.04 of the Tax Code and invites tax collection suits for old delinquent taxes

---

15. Although it has been amended numerous times since its enactment in 1985, Tax Code section 33.011 has always provided a process for a taxpayer to request a waiver of penalties and interest if the act or omission of an officer, employee, or agent of the appraisal district or taxing unit caused or resulted in the taxpayer's failure to pay the tax before delinquency. *See* Tex. Tax Code Ann. § 33.011 (Vernon 2001). Here, it is undisputed that the trust did not request a waiver of penalties or interest pursuant to section 33.011.

16. Because we hold the evidence was legally insufficient, we need not address whether the evidence was factually insufficient.

that are uncollectible under the savings clause.

As the majority states, in this ad valorem tax case, the appellant taxing authorities, which include Harris County and other taxing units,[1] challenged the trial court's decision that the taxing units are not entitled to penalties and interest for delinquent taxes owed for tax year 1997 on real property. It is undisputed that the taxing units had in their files the correct address of the taxpayer, Ronald E. Lee, the trustee of appellee, the Trust Created under Article IV of the Will of Katherine P. Barnhart ("the Trust"), which owned approximately 4.3 acres of property in Houston. It is also undisputed, that from 1993 until 1996, Lee received tax statements for the property at that address and that the Article IV Trust paid the taxes on the property for those years. Nevertheless, when a portion of the land was sold in 1997, *HCAD*—not appellees—listed Lee's address, incorrectly, as 4550 Post Oak Place, Suite 123 in Houston—an address that was out-of-date by 11 years. This was a unilateral mistake by HCAD; neither the Trust nor Lee sent a change of address form to the taxing units or otherwise requested a change in their mailing of record.

HCAD then provided the incorrect address to the Harris County tax collector's office for use in mailing out tax notices on the property for the taxing units, which had previously been taxing the property at the correct address. As a result, the 1997 tax bill for the property was mailed by the Harris County tax collector to Lee at the incorrect 4550 Post Oak Place address. Lee did not receive the 1997 tax bill, and it was returned to the Harris County tax office as "undeliverable." The Trust did not pay the 1997 taxes on the property. In 1999, the taxing units corrected their records to reflect the Trust's correct address, but there is no evidence that any of the delinquent tax statements were ever mailed to the Trust.

Following trial, the tax master found that the trustee did not receive tax statements in 1997, 1998, 1999, 2000, and 2001 and that the Trust never received the five-year section 33.04(b) notice for the 1997 delinquent taxes in 2000. These findings and the 1985 version of section 33.04 of the Tax Code were the basis for the tax master's recommendation that judgment be entered that the taxing units had waived penalties and interest for the 1997 delinquent tax year. The tax master based that recommendation on this Court's holding in *Aldine Independent School District v. Ogg,* 122 S.W.3d 257, 268 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (holding that "[w]hen a fiduciary is appointed by a tax-payer under section 1.11 [of the Tax Code],[2] the taxing unit *must* deliver all notices and tax bills to the fiduciary"). The judgment entered by the trial court in

---

1. The other taxing units are Houston Independent School District, the City of Houston, Harris County Education Department, Port of Houston Authority of Harris County, Harris County Flood Control District, Harris County Hospital District, and Houston Community College System. It appears that the Harris County Tax Collector–Assessor collects taxes for the taxing units in this case.

2. Section 1.11, in effect since 1981, provides:

(a) On the written request of a property owner, an appraisal office or an assessor or collector shall deliver all notices, tax bills, and other communications relating to the owner's property or taxes to the owner's fiduciary.

(b) A request pursuant to this section remains in effect until revoked by the owner. TEX. TAX CODE ANN. § 1.11 (Vernon 2001); *see also Aldine Indep. Sch. Dist. v. Ogg,* 122 S.W.3d 257, 268 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

accordance with the tax master's recommendation is the subject of this appeal.

The 1985 version of section 33.04 of the Tax Code, in effect in 1997 and still in effect on December 30, 1999, when the taxing units sued the Trust for taxes, penalties, and interest, provided in relevant part:

> Notice of Delinquency. (a) *At least once each year the collector for a taxing unit shall deliver a notice of delinquency to each person whose name appears on the current delinquent tax roll.* However, the notice need not be delivered if:
>
> (1) a bill for the tax was not mailed pursuant to the authorization provided by Section 31.01(f) of this code; or
>
> (2) the collector does not know and by exercising reasonable diligence cannot determine the delinquent taxpayer's name and address.
>
> (b) *In addition to the notice required by Subsection (a) of this section, the tax collector for each taxing unit in each year divisible by five shall deliver by mail a written notice of delinquency to each person who owes a tax that has been delinquent more than one year and whose name and mailing address are known to the collector or can be determined by the exercise of reasonable diligence . . . .*
>
> (c) *Penalties and interest on a tax delinquent more than five years or a multiple of five years are cancelled and may not be collected if the collector has not delivered the notice required by Subsection (b) of this section in each year that is divisible by five following the date on which the tax became delinquent for one year.*

Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.40, 1985 Tex. Gen. Laws 2600, 2601 (quoted at *Ogg*, 122 S.W.3d at 262–63) (emphasis added). The 1985 version of the statute became effective August 26, 1985. *See Ogg*, 122 S.W.3d at 263.

Section 33.04 was amended in 1999, effective January 1, 2000.[3] *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec. 33.04, 1999 Tex. Gen. Laws 5097, 5101,

---

**3.** The amended version applied only to section 33.04(b) notices given in and after 2000, so that notices required to be given under the section in 1997 were governed by the 1985 version of section 33.04. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 45, 1999 Tex. Gen. Laws 5097, 5114; *Ogg*, 122 S.W.3d at 263. As amended effective January 1, 2000, section 33.04 provided:

> NOTICE OF DELINQUENCY. (a) *At least once each year the collector for a taxing unit shall deliver a notice of delinquency to each person whose name appears on the current delinquent tax roll . . . .*
> (b) *In addition* to the notice required by Subsection (a), *the collector for each taxing unit in each year divisible by five shall deliver by mail a written notice of delinquency to:*
> *(1) each person whose name and mailing address are listed on the most recent certified appraisal roll, if the taxes on the property of that person are shown on the collector's records as having been delinquent more than one year;* . . .

. . . .
> (d) In a suit brought against a person entitled to receive notice under Subsection (b) for the collection of penalties and interest on a tax delinquent more than five years or a multiple of five years, *it is an affirmative defense available to the person that the collector did not deliver the notice required by Subsection (b).*

. . . .
> (f) *A notice under this section is presumed to be delivered when it is deposited in regular first-class mail, postage prepaid, and addressed to the appropriate person under Subsection (b).* Notwithstanding Section 1.07, the presumption of delivery under this section may not be rebutted with evidence of failure to receive the notice.

Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec. 33.04, 1999 Tex. Gen. Laws 5097, 5101. This version of section 33.04 remained in effect until the effective date of the 2001 amending Act, September 1, 2001.

5114; *Ogg,* 122 S.W.3d at 263. However, because the taxing units sued the Trust for delinquent taxes on December 30, 1999, the 1985 version of section 33.04, and not the 1999 version, applied to the taxing units' 1999 collection suit against the Trust. Moreover, the 1985 version would still have applied had the taxing units sued the trust two days later, *i.e.,* on or after January 1, 2000, under the savings clause in the 1999 Act. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 45, 1999 Tex. Gen. Laws 5097, 5114; *see also Ogg,* 122 S.W.3d at 263.

The taxing authorities dismissed the collection suit they had filed against the Trust in 1999 for delinquent 1997 taxes. Then, in 2002, after the effective September 1, 2002 date of the current version of section 34.001, the taxing authorities refiled their suit. Applying the 1985 Act, the tax master found that the taxing units were not entitled to collect penalties and interest on the Trust's 1997 delinquent taxes, and the trial court affirmed that finding.

I agree with the tax master and the trial court that penalties and interest are not collectable on the Trust's 1997 taxes under the plain language of the 1985 version of section 33.04 because there is no evidence in the record that either notice of the 1997 taxes or the five-year notice of delinquency of those taxes deliverable in 2000 was ever delivered to the Trust, the taxpayer, even though the taxing units had the correct address for the trustee, Lee, in their files and because the failure to send the required notices to the trustee's correct ad-

dress was entirely due to the taxing units' own unilateral mistakes. Because the taxing units did not deliver the notice required by subsection (b) of the 1985 version of section 33.04 to the trustee, whose name and correct address were known to the taxing units, penalties and interest on the Trust's 1997 taxes were cancelled pursuant to section (c) of the 1985 version of section 33.04 and could not be collected.[4] *See* Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.40, 1985 Tex. Gen. Laws 2600, 2601; *Ogg,* 122 S.W.3d at 268 (citing section 1.11 of the Tax Code and holding that taxing unit must deliver all notices and tax bills to fiduciary appointed by taxpayer upon request by taxpayer and that request for delivery to fiduciary remains in effect until revoked by taxpayer).

The majority, however, does not apply the 1985 version of section 33.04 that governed the December 30, 1999 collection suit against the Trust. Nor does it apply the 1999 version of section 33.04 as it existed in 2001, immediately prior to the effective date of the 2001 amendments. Rather, relying upon excerpts from the amendatory language to the 2001 Act, the majority accepts the taxing units' argument that the *current* version of section 33.04 governs this suit—which was refiled in 2002, after the September 1, 2002 effective date of the current version of section 33.04—and that the current statute permits them to collect penalties and interest on the Trust's 1997 taxes because, under the current statute, penalties and interest on delinquent taxes are not excused by a taxing unit's failure to send a five-year

---

4. Likewise, had the tax master applied the 1999 version of section 33.04 to this case, the taxing units would still be unable to collect penalties and interest on the trust's 1997 taxes because the Trust proved up the affirmative defense of non-delivery of the five-year notice provided by subsection (d) of the 1999 version of section 33.04. Specifically, no evidence

shows that either notice of the Trust's 1997 taxes or the five-year notice of delinquency of those taxes deliverable in 2000 was ever "deposited in regular first-class mail, postage prepaid, and addressed to the appropriate person under Subsection (b)," namely, the trustee.

delinquency notice.[5] *See* TEX. TAX CODE ANN. § 33.04 (Vernon 2001). The majority holds, therefore, that the taxing units may collect penalties and interest on the Trust's 1997 delinquent taxes.

In deciding that the 2001 version of section 33.04 governs, the majority relies on its construction of the 2001 Act amending section 33.04, which states, in section 40, "Section 33.04, Tax Code, as amended by this Act, does not apply to taxes subject to a delinquent tax suit *pending* before the effective date of this Act." Act of May 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122 (emphasis added). That sentence is followed immediately by the statement, "Section 33.04, Tax Code, as amended by this Act, applies to all other taxes that became delinquent before the effective date of this Act or that become delinquent on or after that date." *Id.*

The majority overlooks, however, the rest of the paragraph in which the foregoing language is found, which states: "*A delinquent tax that is the subject of a collection suit filed before the effective date of this Act is governed by Section 33.04, Tax Code, as that section existed immediately before the effective date of this Act, and the former law is continued in effect for that purpose.*" Act of May 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122 (emphasis added). This sentence—which contains no qualifier that the collection suit still be pending as of the effective date of the 2001 amendments—follows the language relied on by the majority as grounds for applying the 2001 version of section 33.04 and is clearly not intended to be superfluous. Rather, it

is a savings clause, and it can only be reasonably interpreted as exempting from collection penalties and interest on delinquent taxes that became due before September 1, 2001 that were the subject of *any* collection suit filed before September 1, 2001, regardless of whether that suit was prosecuted to completion, dismissed, or pending on September 1, 2001. The savings clause expressly states that the previous law is continued in effect for *that* purpose—not just to exempt from collection delinquent taxes that were the subject of a suit pending on September 1, 2001.

The reason for the broad language in the savings clause in the 2001 Act that amended section 34.001 is clear: the clause was intended to prevent taxing authorities from fashioning an end-run around the preclusions to collection in the prior law by non-suiting suits it had filed prior to the September 1, 2001 effective date of the amendments and then (as here) resurrecting those suits under the new law and collecting the previously non-collectable interest and penalties. The savings clause cannot be reasonably read to bar the prosecution only of suits taxing authorities had prosecuted to *completion* under prior law because these suits were *already* barred by the law of *res judicata*. Indeed, to interpret the savings clause as having any purpose other than to prevent suits, like the present one, that resurrect claims to penalties and interest not collectable under prior law renders the savings clause null.

The rules of statutory construction provided by the Texas Legislature for the guidance of courts require that every statement in the application clause of a statute be given effect and that the result be just and reasonable. *See* TEX. GOV'T

---

5. The 2001 amending Act eliminated subsections (b) through (f) of section 33.04, stating in section 40 that "[p]enalties and interest on a delinquent tax are not cancelled under Section 33.04, Tax Code, for failure to deliver any

notice under that section as it existed immediately before the effective date of this Act." Act of May 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122.

CODE ANN. § 311.021(2), (3) (Vernon 2005) (stating that "the entire statute is intended to be effective"; "a just and reasonable result is intended"). Moreover, just as it is presumed that an entire statute is intended to be effective, so it should be presumed that an entire legislative act is intended to be effective. *HCAD v. Dincans,* 882 S.W.2d 75, 77 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Allegheny Mut. Cas. v. State,* 710 S.W.2d 139, 141 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd) (same). In construing a statute, whether it is considered ambiguous or not, the court may consider among other matters the "consequences of a particular construction." TEX. GOV'T CODE ANN. § 311.023(5); *H & C Commc'ns v. Reed's Food Int'l, Inc.,* 887 S.W.2d 475, 477 (Tex.App.-San Antonio 1994, no writ).

Amendments to the same statute enacted at the same session of the legislature must also be harmonized, if possible, so that effect may be given to each, and the provisions in a statute must be harmonized such that if a general provision appears to conflict with a special provision, "the provisions shall be construed, if possible, so that effect is given to both." TEX. GOV'T CODE ANN. §§ 311.025(b), 311.026. In this regard, the Texas Supreme Court has repeatedly held that "we 'give effect to all the words of a statute and [do] not treat any statutory language as surplusage[,] if possible.'" *Spradlin v. Jim Walter Homes, Inc.,* 34 S.W.3d 578, 580 (Tex.2000) (quoting *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987)). The court should not construe statutory language "in a way that renders it idle or inoperative"; it cannot presume that the legislature intended "a blatant redundancy." *Spradlin,* 34 S.W.3d at 580; *Hanson v. Jordan,* 145 Tex. 320, 198 S.W.2d 262, 263 (1946). Statutory provisions must be irreconcilable before one will take precedence over the other. *H & C Commc'ns,* 887 S.W.2d at 478. Nor may a court insert additional words into a statutory provision unless it is necessary to give effect to clear legislative intent. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981); *H & C Commc'ns,* 887 S.W.2d at 478. Finally, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022 (Vernon 2005).

Here, section 33.04 as amended—effective September 1, 2001—is expressly made retrospective *only* for collection suits for penalties and interest that were *not* the subject of collection suits filed before September 1, 2001; penalties and interest sought in suits filed under the old law are expressly saved from collection by the savings clause to the 2001 Act.

By reading into the savings clause of the 2001 amending Act the requirement that a suit be pending as of September 1, 2001 in order for the savings clause to apply, the majority reads restrictive language into the clause that is not there and that makes the actual savings clause redundant, in violation of the rules of statutory construction, which require that every statement in a statute—and, by extension, every statement in the application clause of a statute—be given effect, that none be added unless absolutely necessary, and that the provisions in a statute be harmonized.

Even more critically, the majority fails to take into account the consequences of its construction of the savings clause to the 2001 amendments. Specifically, its construction of the 2001 amending Act as saving from prosecution only those collection suits that were pending on September 1, 2001 eviscerates the savings clause by effectively inviting the taxing units to re-file—or to continue the prosecution of—*all* the collection suits for taxes and penalties it dismissed prior to September 1, 2001 because they were uncollectible under the prior law. In other words, the opinion invites the end-run around the prohibitions

against suits for the collection of penalties and interests on delinquent taxes uncollectible under prior law that the savings clause to the current version of section 34.001 is designed to preclude.

Because the taxing units filed suit in 1999 against the Trust to collect penalties and interest on the Trust's delinquent 1997 taxes, I would hold that their 2002 suit for penalties and interest on the same 1997 taxes is barred by the plain language of the savings clause to the 2001 amendments to section 33.04 of the Tax Code. I would further hold that the tax master correctly construed and applied the law set out in prior section 33.04 of the Tax Code and the savings clause in the 2001 Act, which amended section 33.04, and that the trial court correctly entered judgment on the tax master's recommendation that appellants are not entitled to collect penalties and interest on appellees' 1997 taxes.

### Conclusion

I would affirm the judgment of the trial court.