# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-09-00422-CV
---

**Gloria Norton, Appellant**

**v.**

**Deer Creek Property Owners Association, Inc., Appellee**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT**
**NO. D-1-GN-08-002648, HONORABLE RHONDA HURLEY, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

Appellee Deer Creek Property Owners Association, Inc. ("Deer Creek") filed this lawsuit against one of its residents, appellant Gloria Norton, for violating its restrictive covenants. Deer Creek alleged that a large gazebo-like structure on Norton's deck had fallen into disrepair and was negatively affecting her neighbors' enjoyment of their property. After a hearing, the trial court ordered a permanent injunction requiring Norton to remove the gazebo and to comply in the future with all of Deer Creek's restrictive covenants. The court also awarded Deer Creek $3,500 in attorney's fees under the property code. *See* Tex. Prop. Code Ann. § 5.006 (West 2004). Norton, who appeared pro se at the hearing, asserts six points of error on appeal: (1) that the trial court improperly ordered a permanent injunction during a hearing noticed for a temporary injunction; (2) that the case was improperly tried "on the merits" without notice to Norton; (3) that Norton was deprived of her right to trial by jury; (4) that the trial court improperly enforced only certain portions

of a prior settlement agreement between the parties; (5) that Deer Creek was not entitled to attorney's fees as consequential damages; and (6) that Deer Creek was not entitled to attorney's fees under the property code. As a cross-point, Deer Creek asserts that Norton's appeal is frivolous and seeks damages and attorney's fees. We affirm the trial court's judgment and overrule the cross-point.

## BACKGROUND

Gloria Norton is a resident of the Deer Creek Condominium Planned Unit Development. Use of the properties in this development are governed by a Declaration of Covenants, Conditions and Restrictions ("the CCRs"). The CCRs state, in relevant part:

> Section 1.12. "Improvements", shall include, but shall not be limited to, the erection of, additions to, or alterations of any structure . . . .
>
> . . .
>
> Section 6.01. Construction of Improvements. . . . [N]o improvements may be constructed or erected on any Lot by anyone other than the [developer] without the prior written notice of the Environmental Control Committee appointed by the Association.
>
> . . .
>
> Section 7.19. Repair of Buildings. No improvements situated on any Lot or the Common Area shall be permitted to fall into disrepair, and all such improvements shall at all times be kept in good condition and repair and adequately painted or otherwise finished.

Deer Creek, as the property owners' association for the development, is responsible for enforcing the CCRs.

2

In February 2008, Deer Creek's board of directors issued a letter informing Norton that a cloth-covered gazebo on her deck violated Section 7.19 of the CCRs and asked that she "repair, replace or remove the gazebo immediately." The following month, the property adjacent to Norton's home was sold to a new resident, John Thompson. According to an affidavit executed by Thompson and attached to Deer Creek's application for temporary injunction, the properties contain "zero lot line" homes that afford minimal separation between the neighboring houses, so that Norton's deck is situated very near to Thompson's front door and living room. Thompson further averred that while Norton indicated to him prior to his moving in that she would "take care" of the gazebo, explaining that it was erected during a dispute with a previous neighbor, the cloth cover of the gazebo nonetheless remained "shredded and very unsightly" for some time.

In June 2008, Deer Creek issued a letter formally notifying Norton of its intention to pursue legal action if she failed to remove the gazebo. *See* Tex. Prop. Code Ann. § 209.006 (West 2008) (requiring property owners' association to give written notice before initiating enforcement action against owner). Pursuant to the property code, Norton requested a hearing before Deer Creek's board regarding the matter. *See id.* § 209.007 (West 2008). After the hearing failed to produce a resolution, Deer Creek filed suit against Norton, seeking an injunction and attorney's fees in accordance with the property code. *See id.* § 5.006(a) ("In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees . . . .").

Over the next several months, counsel for Norton and Deer Creek negotiated a settlement agreement. The agreement was reflected in a document drafted by counsel for Deer

Creek, titled "Mutual Release of All Claims," which stated that each party would discharge any and all claims against the other arising out of the dispute. The release also stated that each party would bear its own attorney's fees in connection with the dispute. Notably, the first provision of the release contemplated that the gazebo had been removed:

> Gloria Norton, on behalf of herself and her assignees, has agreed to this settlement, and has complied with the terms of this settlement by completely removing the "gazebo" structure on her back deck, which was the focus of the complaint by Deer Creek Property Owners Association, Inc.

The unsigned release was delivered to Norton in October 2008. Approximately two months later, Norton signed, scanned, and e-mailed the release to counsel for Deer Creek, though it is undisputed that the gazebo still stood on her deck at that time. Based on Norton's failure to remove the gazebo, Deer Creek proceeded with this suit. Norton, by that time acting pro se, properly filed a demand for trial by jury and paid the requisite jury fee. *See* Tex. R. Civ. P. 216. Trial was initially set for January 7, 2009, but when counsel for Deer Creek was unable to appear due to a medical emergency, trial was reset for January 20. Norton, herself scheduled to undergo a medical procedure on January 21, sought another continuance and obtained a trial setting for May 28. Alleging that Norton had falsely represented to the court that the conditions of the settlement had already been fulfilled—i.e., that the gazebo had been taken down when it had not—and that Norton improperly obtained a continuance at an ex parte hearing, Deer Creek filed a motion to strike the setting, a motion for sanctions, a motion to reset, and an application for a temporary injunction. The trial court set a hearing on these matters for March 3. The gazebo was removed from Norton's deck shortly before the March 3 hearing, although the parties dispute the exact date.

4

The reporter's record of the March 3 hearing indicates that the trial court allowed the parties to make their opening statements off the record. After these opening statements, the contents of which are unknown, the trial court came back on the record and stated, "The issue of the hearing will be limited as to whether or not I should order attorney's fees," to which Norton responded, "Okay." The Court then asked, "Do you have any questions, Ms. Norton?" Norton answered, "No, I don't."

At that time, counsel for Deer Creek testified to the reasonableness of his fees, subject to cross-examination by Norton, and submitted the language of the parties' mutual release to the court to put into the form of an order for permanent injunction.[1] With respect to attorney's fees, Deer Creek reiterated the position taken in its pleadings that it was entitled to attorney's fees under section 5.006 of the property code. *See* Tex. Prop. Code. Ann. § 5.006. After the close of evidence, the following exchange occurred:

THE COURT:     All right, I'm going to go ahead and enter an order, and here's what I understand the agreement of the parties to be just for the record, because we may have to get an order entered on this in the hearing.

I understand that Gloria Norton, herself and her assigns have agreed to removing the gazebo structure on her back deck and has done so as of today's date.

NORTON:     Yes.

---

[1] Deer Creek never signed the mutual release, citing Norton's failure to remove the gazebo until shortly before the hearing.

THE COURT: I also understand that she is agreeing here today to keep that down, and that she has no intention of putting that back on the deck; is that correct?

NORTON: That's correct.

THE COURT: All right, that will be ordered. It is further ordered that Ms. Norton is to comply with all existing Deer Creek declarations, covenants, conditions, and restrictions in the future which requires obtaining Environmental Control Committee approval prior to the erection of any future improvements including improvements which are attached, unattached, permanent or temporary. Ms. Norton, I understand that you are also agreeing to an order to that effect; is that correct?

NORTON: Correct.

THE COURT: All right, that will be so ordered. And that will be in the form of a permanent injunction.

. . .

THE COURT: In addition to that, I'm going to award attorney's fees to the Deer Creek Property Owners Association in the amount of $3500 . . . .

The trial court subsequently issued a final judgment ordering a permanent injunction, consistent with the parties' agreement at the hearing. At Norton's request, the trial court issued findings of fact and conclusions of law to support its judgment, specifically finding that at the March 3 hearing, "the parties announced in open court that they had resolved the matters in controversy with the exception of [Deer Creek's] request for the award of attorney's fees." The trial court further found that Norton had agreed to the entry of a final order on all issues, that she had waived her rights to a jury trial or a further trial setting, and that she had knowingly and voluntarily

6

agreed to allow the trial court to determine the issue of attorney's fees. Norton's motion for new trial was overruled by operation of law, *see* Tex. R. Civ. P. 329b(c), and this appeal followed.

## STANDARD OF REVIEW

The grant or refusal of a permanent or temporary injunction is ordinarily within the sound discretion of the trial court and appellate review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 851 (Tex. App.—Austin 2002, pet. denied).

In an appeal of a judgment rendered after a bench trial, findings of fact have the same force and dignity as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When the appellate record contains a reporter's record, findings of fact are binding only if supported by the evidence. *Aldine Indep. Sch. Dist. v. Ogg*, 122 S.W.3d 257, 265 (Tex. App.—Houston [1st Dist.] 2003, no pet.). If the findings are challenged, we review the sufficiency of the evidence supporting the findings. *Id.* A trial court's conclusions of law are reviewed de novo, but incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

The availability of attorney's fees under a particular statute is a question of law that we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999); *Colonial Am. Cas. & Sur. Co.*, 214 S.W.3d 725, 729 (Tex. App.—Austin 2007, no pet.).

7

**DISCUSSION**

**Procedural Issues**

In her first three points of error, Norton complains of certain procedural irregularities surrounding the trial court's issuance of the permanent injunction. In connection with each of these points of error, Norton contends that because she appeared before the trial court pro se, she should be afforded special consideration with respect to any potential waiver of her procedural complaints. However, it is well-settled law that "pro se litigants are not exempt from the rules of procedure." *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005); *see als*o *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978) ("Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel."). As a result, Norton's pro se status at trial will not affect our analysis of her procedural complaints.[2]

Norton's first point of error on appeal is that the trial court improperly ordered a permanent injunction at a hearing that was noticed for a temporary injunction. While litigants are ordinarily entitled to separate temporary injunction and permanent injunction hearings, the parties can agree to waive the separation and combine the two proceedings. *See Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981). In the present case, before ordering the permanent injunction, the trial court asked Norton whether she agreed to keep the gazebo off of her deck, to which Norton responded, "That's correct." The trial court then asked Norton whether she agreed to comply with all of Deer Creek's CCRs in the future, further stating, "I understand that you

---

[2] Norton is represented by counsel on appeal.

are also agreeing to an order to that effect; is that correct?" Again, Norton responded, "Correct." The trial court then stated, "All right, that will be so ordered. And will be in the form of a permanent injunction." Norton did not object to the entry of the permanent injunction, stating instead, "I haven't violated any of [the CCRs] so far in 10 and a half years."[3] Norton's statements on the record reflect that she expressly agreed to the imposition of a permanent injunction, and therefore waived the separation between temporary and permanent injunction proceedings. *See id.* This determination is consistent with the trial court's conclusion of law C-7, which states, in relevant part, that "Norton, by her agreements in Court, authorized the imposition of a Permanent Injunction concerning the future construction of improvements on Gloria Norton's property." Because Norton consented to the combination of the temporary and permanent injunction hearings, we hold that the trial court did not err in ordering a permanent injunction at the March 3 hearing. Norton's first point of error is overruled.

In her second point of error, Norton asserts that the trial court improperly tried the case "on the merits" without providing her with adequate notice. Texas Rule of Civil Procedure 245 allows a case to be set for trial "with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties." Tex. R. Civ. P. 245. The rule further provides that if the case has previously been set for trial, it may be reset at a later date "on any reasonable notice to the parties or by agreement of the parties." *Id.* Norton argues that by proceeding to trial on the merits at the temporary injunction hearing, the trial court failed to provide

---

[3] This statement appears to be based on Norton's belief that the gazebo did not actually violate the CCRs. We need not address that issue, as it is not before us in this appeal.

her with any notice, much less reasonable notice, and therefore violated Rule 245 and, by extension, her fundamental due-process rights. *See Custom-Crete, Inc. v. K-Bar Servs.*, 82 S.W.3d 655, 659 (Tex. App.—San Antonio 2002, no pet.) (holding that failure to comply with Rule 245 results in violation of fundamental due process). Rule 245 makes clear, however, that a case may be set for trial at any time "by agreement of the parties." Tex. R. Civ. P. 245. Therefore, if Norton agreed to proceed to the merits at the March 3 hearing, Rule 245's notice requirement is satisfied.

The trial court made findings of fact that at the March 3 hearing, Norton "made a voluntary and knowing waiver of her right to a further trial setting in this case" and "a voluntary and knowing agreement to go forward on the last remaining issue, that being [Deer Creek's] request for the award of attorney's fees." While Norton asserts that these findings are unsupported by the evidence, the record reflects that when the trial court stated, "The issue of the hearing will be limited as to whether or not I should order attorney's fees," Norton responded, "Okay." The trial court then inquired further into Norton's understanding of the proceedings, stating, "Do you have any questions, Ms. Norton?" Norton responded, "No, I don't," and the hearing proceeded without objection from Norton. There is no evidence that Norton ever withdrew, qualified, or even voiced concern at any point during the hearing regarding her initial agreement to proceed to trial on the merits.[4] Based on

---

[4] On appeal, Norton emphasizes the fact that just before her testimony at the hearing, she stated, "I didn't expect that," suggesting that this statement indicates some sort of confusion or reluctance to proceed with trial on the merits. This statement, which occurred after Norton had cross-examined Deer Creek's counsel regarding attorney's fees, appears in the following context:

THE COURT:    Okay. Do you wish to come testify[?]

NORTON:    Yes, I would.

this record, we hold that the trial court's findings that Norton agreed to proceed to trial without further notice are sufficiently supported by the evidence. *See Ogg*, 122 S.W.3d at 265. Therefore, because the trial court proceeded to trial by agreement of the parties, the notice requirement of Rule 245 was satisfied. *See* Tex. R. Civ. P. 245 (case may be set for trial with reasonable notice or "by agreement of the parties"). Norton's second point of error is overruled.

In her third point of error on appeal, Norton asserts that the trial court improperly deprived her of her constitutional right to trial by jury. *See* Tex. Const. art. I, § 15. Norton argues that because she perfected her right to a jury trial by filing a written demand and paying the requisite fee, *see* Tex. R. Civ. P. 216, it was an abuse of discretion for the trial court to deny her a jury trial without her consent. *See Cardenas v. Montfort, Inc.*, 894 S.W.2d 406, 408 (Tex. App.—San Antonio 1994, writ denied) ("A court . . . does not have discretion, when a party has properly requested a jury trial under TRCP 216, and is present in court, to deny that party a jury trial without that party's assent.").

Norton's argument is premised on her contention that the trial court proceeded with a bench trial without her consent. The trial court expressly found, however, that Norton agreed to proceed without a jury at the March 3 hearing, specifically that Norton "made a voluntary and

---

| THE COURT: | Okay. You can bring your notes or whatever. Come on up here. Be careful, please. |
| NORTON: | I didn't expect that. |

It is not at all clear what Norton is referencing by this statement, and we decline to read it as an objection to proceeding on the merits, particularly given Norton's previous cross-examination of counsel and her clear indication of a desire to testify.

knowing waiver of her right to a jury trial, and indicated her agreement to the entry of a final order on all issues." Norton asserts that this finding is unsupported by the evidence.

The right to a jury trial may be waived by a party's failure to act, such as a failure to object to the trial court going forward with a bench trial or a failure to indicate in any way that the party intends to stand on its perfected right to a jury trial. *See In re A.M.*, 936 S.W.2d 59, 61 (Tex. App.—San Antonio 1996, no writ). Assent to a non-jury trial waives the right to a jury trial and is "easily implied in a situation in which a party appears before the court without objection and proceeds to try its case before the bench." *Cardenas*, 894 S.W.2d at 409. In the present case, Norton appeared before the court without objection, made no mention of her request for a jury trial, repeatedly confirmed her understanding of the proceedings, conducted cross-examination of witnesses, and ultimately assented to a final judgment.[5] Under the circumstances, we cannot conclude that the trial court's finding of waiver is unsupported by the evidence.

Norton also argues that she could not have knowingly and voluntarily waived her right to a jury trial because she did not understand the legal implications of her actions. Specifically,

---

[5] While Norton asserts that her act of appearing and proceeding with a bench trial on the merits does not constitute waiver of her right to a jury trial, both of the cases Norton cites in support of this proposition involve parties who filed a jury demand, received an adverse ruling from the trial court, and then proceeded to a bench trial because they had no other option. *See McKern v. McCann*, 675 S.W.2d 222, 223-24 (Tex. App.—Austin 1984, writ ref'd) (holding that by announcing ready and proceeding to judgment in bench trial, appellant "did not waive her right to a jury trial since she had previously received an adverse ruling on that issue"); *Coleman v. Sadler*, 608 S.W.2d 344, 346-47 (Tex. App.—Amarillo 1980, no writ) (holding that appellant "did not waive his right to a jury trial by announcing 'ready' at the non-jury trial" because trial court's adverse ruling on his jury demand left him "without a conscious choice between a jury and non-jury trial"). Unlike the parties in *McKern* and *Coleman*, Norton never received an adverse ruling from the trial court on her jury demand.

Norton argues that she should have been admonished that her agreement to the terms of the mutual release would be interpreted as a waiver of the right to a jury trial. First, Norton did not waive her right to a jury trial solely by making any agreement on the record, but by proceeding to a bench trial without any indication whatsoever that she intended to stand on her perfected right to a jury trial. *See In re A.M.*, 936 S.W.2d at 61. Second, the record reflects that Norton did not enter into an agreement to be bound by the mutual release. Rather, she agreed on the record to allow the trial court to decide the issue of attorney's fees and further agreed to the entry of an order enjoining her from erecting the gazebo or violating the CCRs. Having expressly agreed to the resolution of all issues in controversy at the March 3 hearing, there is no credible argument that Norton could have believed she was entitled to a future jury trial. We note also that with respect to these agreements, the record reflects no hesitation on Norton's part nor any pressure from either Deer Creek or the trial court.

Because Norton expressly agreed to proceed with a bench trial, we hold that the trial court did not improperly deprive her of her right to a jury. Norton's third point of error is overruled.

**Partial Enforcement of Settlement Agreement**

Norton's fourth point of error on appeal is that the trial court improperly enforced the mutual release against her but not against Deer Creek. Essentially, Norton complains that the trial court's order required her to not return the gazebo to her deck and to comply with all CCRs—obligations that she had already pledged to accept under the mutual release—yet allowed Deer Creek to avoid bearing its own attorney's fees as stipulated in the mutual release. Norton's claim fails, however, because while the trial court may have modeled the terms of its order from the

13

prohibitory language contained in the mutual release, the agreement that was enforced by the order was not the mutual release, but the new agreement entered into by the parties at the hearing. *See* Tex. R. Civ. P. 11 (agreement between parties may be "made in open court and entered of record"). As previously discussed, Norton stated on the record that she agreed to keep the gazebo down permanently and that she agreed to an order requiring her to comply with all CCRs in the future. Significantly, the final judgment states, in relevant part:

> The Court finds that Gloria Norton *has agreed in open court* to comply with all existing [CCRs], now and in the future; and further agrees to remove and has removed the "gazebo" structure in question and agrees to not put the structure back up in the future without first seeking approval of [Deer Creek]. The Court approves the agreement and enters this order pursuant to said agreement.

(Emphasis added) The judgment makes no mention of the mutual release, stating only that the court considered "the agreements of the parties *made on the record*, the evidence regarding the issue of attorney's fees, and the arguments of counsel and Ms. Norton" before issuing the order. (Emphasis added) As these statements indicate, the trial court did not unilaterally enforce the mutual release against Norton. Accordingly, the trial court did not err in declining to incorporate the attorney's fees provision of the mutual release into the permanent injunction order.

Norton also argues that Deer Creek should not have been allowed to seek partial enforcement of the mutual release without first pleading and proving a breach of contract claim. *See Padilla v. La France*, 907 S.W.2d 454, 462 (Tex. 1995) ("An action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof."). The record reflects that Deer Creek never sought to enforce the mutual release as a binding settlement agreement

14

between the parties. As a result, we need not address Norton's complaint that Deer Creek failed to set the required pleading foundation to do so. Again, the trial court did not enforce the mutual release at the March 3 hearing, but instead entered an order on the agreement made by the parties in open court.

Norton's fourth point of error is overruled.

**Attorney's Fees**

In her fifth point of error on appeal, Norton argues that the trial court erred in awarding attorney's fees because Deer Creek improperly sought attorney's fees as consequential damages for her failure to timely perform her obligations under the mutual release.[6] Deer Creek's original petition clearly seeks attorney's fees under section 5.006 of the property code, which allows for an award of attorney's fees to a prevailing party in a suit based on breach of a restrictive covenant, and makes no mention of consequential damages for any breach of the mutual release. *See* Tex. Prop. Code Ann. § 5.006(a). At the hearing, Deer Creek again argued that it was entitled to attorney's fees under section 5.006 of the property code and provided the trial court with a copy of the statute. Finally, in conclusion of law C-5, the trial court stated that Deer Creek's attorney's fees "are recoverable under Tex. Prop. Code Ann. Section 5.006." There is simply no support for

---

[6] Norton asserts on appeal that the trial court could have awarded attorney's fees (1) under section 5.006 of the property code, (2) as consequential damages based on failure to comply with the mutual release, and (3) as "unspecified sanctions as requested in Deer Creek's motions." Norton then asserts, correctly, that there was no mention of a motion for sanctions at the March 3 hearing, so the attorney's fees awarded could not have represented sanctions. We will therefore address only the issue of whether attorney's fees were improperly awarded as consequential damages. We note that there was also no mention of consequential damages for any breach of the mutual release at the March 3 hearing.

15

Norton's theory that attorney's fees were awarded as consequential damages for breach of contract. We overrule her fifth point of error.

Norton's sixth point of error on appeal is that the trial court erred in awarding attorney's fees under section 5.006 of the property code because the gazebo had been removed prior to the hearing, leaving no justiciable dispute. Section 5.006(a) states:

> In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.

*Id.* Notably, the statute does not require the existence of an ongoing breach at the time of the judgment in order to award attorney's fees. By the plain language of the statute, the action need only be "based on [a] breach" in order to trigger the mandatory award of attorney's fees. It is undisputed that the present case is an action based on Deer Creek's claim that Norton's gazebo constituted a breach of a restrictive covenant. Accordingly, this suit is "an action based on breach of a restrictive covenant," as contemplated by section 5.006. *Id.*

Deer Creek, however, is not entitled to attorney's fees under section 5.006 unless it can be considered a "prevailing party" under the statute. This case presents the unusual circumstance of a trial court ordering an injunction against a property owner without first being asked to decide whether the owner actually breached a restrictive covenant. *Cf. City of Houston v. Muse*, 788 S.W.2d 419, 423-24 (Tex. App.—Houston [1st Dist.] 1990, no writ) (holding that City was "prevailing party" because trial court ordered injunction after determining that other party violated restrictions). Without a statutory definition of "prevailing party," it is not immediately obvious

16

whether Deer Creek was the prevailing party in the court below on any issues other than the application of section 5.006 itself. The Texas Supreme Court recently applied federal jurisprudence when construing a contractual "prevailing party" attorney's-fees provision that did not define the term. *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653-54 (Tex. 2009). In *Intercontinental*, the court noted that under federal law, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 654 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). Based on this federal test, the court held that the plaintiff, KB Home, could not be considered a "prevailing party" because it recovered no damages, secured no declaratory or injunction relief, obtained no settlement in its favor, and received none of the relief sought in its petition. *See id.* at 655. The Texas Supreme Court's analysis in construing an undefined contractual "prevailing party" provision is equally applicable to our construction of the undefined statutory "prevailing party" provision involved here. Unlike the plaintiff in *Intercontinental*, Deer Creek did not "leave the courthouse empty-handed." *Id.* Rather, Deer Creek obtained the injunctive relief that it sought, materially altering the legal relationship between the parties. In ordering Norton not to return the gazebo to her back deck and to comply with all CCRs in the future, the court ordered Norton to modify her behavior in a way that directly benefited Deer Creek. As a result, Deer Creek qualifies as a "prevailing party" under section 5.006.

If a party satisfies the requirements of section 5.006 of the property code, the award of reasonable attorney's fees to that party is mandatory, rather than discretionary. *See Gorman v. Countrywood Prop. Owners Ass'n*, 1 S.W.3d 915, 918 (Tex. App.—Beaumont 1999, pet. denied).

17

Having determined that Deer Creek was a prevailing party in an action based on breach of a restrictive covenant pertaining to real property, thereby satisfying the criteria for application of section 5.006, we hold that the trial court did not err in awarding attorney's fees to Deer Creek.[7] Accordingly, Norton's sixth point of error is overruled.

**Appellee's Cross-Point: Frivolous Appeal**

In a cross-point on appeal, Deer Creek argues that it is entitled to damages on the ground that Norton's appeal is frivolous and was brought for purposes of harassment. *See* Tex. R. App. P. 45. In determining whether an appeal is frivolous, we review the record from the appellant's viewpoint and decide whether the appellant had reasonable grounds to believe that the judgment could be reversed. *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Whether to grant sanctions for a frivolous appeal is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances. *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

The courts of appeals have identified certain circumstances that tend to indicate that an appeal is frivolous, such as: (1) an unexplained absence of a statement of facts in the appellant's brief; (2) an unexplained failure to file a motion for new trial when it is required to successfully

---

[7] We do not address the reasonableness of the amount of attorney's fees awarded by the trial court, as Norton does not raise the issue on appeal. Of the $4,200 requested by Deer Creek's counsel at the hearing, the trial court awarded $3,500. The trial court declined to award the $7,500 in conditional appellate fees requested by Deer Creek's counsel, as well as the additional fees requested in the event that Norton filed an unsuccessful motion for new trial.

assert factual insufficiency on appeal; (3) a poorly written brief raising no arguable points of error; or (4) the appellant's unexplained failure to appear at oral argument. *See, e.g.*, *Faddoul v. Oaxaca*, 52 S.W.3d 209, 213 (Tex. App.—El Paso 2001, no pet.); *In re S.R.M.*, 888 S.W.2d 267, 269 (Tex. App.—Houston [1st Dist.] 1994, no writ). None of these circumstances are present here. Moreover, although our decision overrules each of Norton's points of error, Deer Creek has not demonstrated that Norton's appeal is among the "truly egregious circumstances" for which we would award damages. *See Goss*, 252 S.W.3d at 657. Accordingly, Deer Creek's cross-point is overruled.

## CONCLUSION

Having overruled each of Norton's six points of error as well as Deer Creek's cross-point, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 22, 2010

19